IN RE:
JUAN C. BALCELLS GALLARRETA

DEBTOR

CIVIL NUM. 11-06637-SEK7

CHAPTER 7

# URGENT MOTION REQUESTING ORDER TO THE DEBTOR

NOW APPEARS petitioner, Amarilis Gonzalez, pro se, and respectfully STATES and PRAYS:

1. Mr. Juan Carlos Balcells Gallarreta filed for bankruptcy under Chapter 7 of the United States Bankruptcy Court entered August 5, 2011. Debtor intentionally filed the bankruptcy one working day before the contempt hearing for **child support arrears** scheduled for August 8, 2011 at First Instance Court of Family and Minors of Bayamon, no. DDI2006-4055 Amarilis Gonzalez Garcia v. Juan C. Balcells Gallarreta.

2. The final child support judgment was entered on June 30, 2011 establishing an payment order of $4,838 monthly for the minor ABG, age 17 and JFBG, age 14. The minor ABG is a senior year student of Academia Maria Reina while JFBG is a freshman student of Colegio San Ignacio.

3. Mr. Balcells knowingly and willfully omitted in the list of creditors the amounts owed to Academia Maria Reina and Colegio San Ignacio. He also omitted to include in his list the child support accumulated debt.

4. The debtor knew schools classes commenced TODAY, August 8, 2011, and waited until this moment for the filing of the bankruptcy. Debtor reckless conduct jeopardized the minor's academic future, causing irreparable damages and emotional distress.

1

5. The amount owed to Academia Maria Reina is $17,147 and to Colegio San Ignacio is $23,100. See appendix. Mr. Balcells has the obligation to make the payments to creditors Academia Maria Reina and Colegio San Ignacio. The obligation arises from an agreement made directly with both creditors (*the schools*) voluntarily by the debtor on behalf of the minors and is part of the order of child support payments.

6. Mr. Balcells fraudulently omitted to inform this court that he is "sole stockholder" of a Corporation named Gusupa with assets and real estate property estimated in the amount of $1,000.000.00 or more. See appendix.

7. Mr. Balcells filed bankruptcy to evade his child support obligation, the contempt hearing for the child support debt payment and the debt payment of the amounts owed to the schools. In fact, the competent hearing scheduled for August 8 was suspended due to the Bankruptcy filing. Meanwhile, the minors ABG and JCBG are not permitted to begin school until the debt is satisfied.

8. Before any consideration of discharge and since school classes already commenced, the <u>petitioner respectfully requests this Honorable Court, to issue an URGENT ORDER to Juan C Balcells to pay school debt immediately in order to reinstall the students to their respective schools, granting one (1) day for the payment and reinstallation</u>.

9. Petitioner also requests this court to issue an urgent order to Juan C. Balcells to pay monthly child support and the total amounts owed in child arrears.

10. In honor of justice, <u>Petitioner PRAYs for PROTECTION</u>, considering that minors are been emotionally affected due to the improper filing in this Bankruptcy Court without the due investigative diligence and without complying with the requirements of a full disclosure of debtor's assets before filing.

2

11. The action represented by debtor is for the sole purpose of not complying with the child support obligation, is unacceptable conduct and should be harshly sanctioned by this Honorable Court.

WHEREFORE, the undersigned PETITIONER respectfully requests this Honorable Court URGENT ORDER to Juan C Balcells to pay amounts owed to both schools, Academia Maria Reina and Colegio San Ignacio, granting one (1) day for the payment and the reinstallation.

RESPECTFULLY SUBMITTED

In San Juan, Puerto Rico, this 8th day of August, 2011.

We CERTIFY that on this same date we have delivered notification of this motion.

Amarilis González García,
on behalf of minors ABG & JFBG
Petitioner
P.O. Box 360695
San Juan, PR. 00936-0695
Tel. (787)605-0704
E-mails: amarilis@ymail.com

8/4/11 at 14:56:27.64

# Academia María Reina 2010-2011

## Customer Ledgers
### For the Period From Jan 1, 2010 to Jul 31, 2011

| Customer ID<br>Customer | Date | Trans No | Typ | Debit Amt | Credit Amt | Balance |
|---|---|---|---|---|---|---|
| 22015<br>Balcells Gallarreta, Jua | 3/1/10 | 2010-11-M-2 | SJ | 1,090.00 | | 1,090.00 |
| | 6/10/1 | 61010ME04 | CRJ | | 1,090.00 | 0.00 |
| | 8/1/10 | 2010-2011-P- | SJ | 7,752.00 | | 7,752.00 |
| | 3/1/11 | 2011-2012-M | SJ | 1,195.00 | | 8,947.00 |
| | 7/21/1 | 2011-2012-G- | SJ | 200.00 | | 9,147.00 |
| | 7/21/1 | 2011-2012-P- | SJ | 8,000.00 | | 17,147.00 |
| **Report Total** | | | | 18,237.00 | 1,090.00 | 17,147.00 |



**OFICINA DE CONTABILIDAD**

5 de agosto de 2011

Sra. Amarilis González
Urb. Villas Reales
381 Versalles
Guaynabo, PR 00969

Estimada Sra. González:

Según nos ha solicitado, a continuación detallamos el balance adeudado al Colegio San Ignacio de Loyola para la educación de su hijo Juan Balcells González al 5 de agosto de 2011.

| Año Escolar | Concepto | Fecha límite de pago | Balance Pendiente |
|---|---|---|---|
| 2009-2010 | Pensión | 1ro de junio de 2009 | 4,100.00 |
| 2010-2011 | Pensión | 1ro de junio de 2010 | 8,550.00 |
| 2011-2012 | Matrícula | 15 de marzo de 2011 | 875.00 |
| | Cuota Infraestructura | 15 de marzo de 2011 | 750.00 |
| | Pensión | 1ro de junio de 2011 | 8,825.00 |
| **TOTAL** | | | 23,100.00 |

Estamos en la mejor disposición de aclararle cualquier duda.

Atentamente,

Tamarie Cintrón
Contralor

# HISTORIAL

Corporación creada hace dieciseis (16) años que se dedica a la distribución al por mayor de artículos de "souvenirs" y de regalo. Cuentan con más de quinientos (500) clientes que incluyen tiendas al detal y cadenas nacionales tales como: Walgreens, J.C. Penney & W.H. Smith. La empresa cuenta con tres vendedores a tiempo completo y dos a tiempo parcial. En noviembre de 1996 (hace dos años) abrieron una tienda al detal conocida como Rús-ti-ko que opera dentro de la misma corporación y que se dedica a la venta de muebles y accesorios rústicos importados mayormente de Méjico y también de Sur América. Esta corporación les ha brindado una muy saludable diversificación.

Aunque es una industria competida a esta empresa los aventaja que mantienen mercancia en inventario para suplir la demanda en cualquier época y su sistema de envío es mas rápido y eficiente que sus competidores en E.U. Normalmente este tipo de producto (souvenirs) se venden en la Isla mediante catálogos, careciendo de "show-rooms" donde apreciar el producto que se está comprando.

El Sr. Juan Carlos Balcells tiene estudios universitarios en mercadeo y desde 1986, ocupa la posición de presidente y único dueño de la corporación. Es un joven muy dinámico y está a cargo de las compras directamente. Su padre le asiste en la operación del negocio y atiende el mismo cuando éste se ausenta por los viajes para hacer las compras del negocio.

En 10-21-97 el Sr. Balcells firmó un contrato de arrendamiento y opción a compra sobre una propiedad en la Ave. De Diego en Puerto Nuevo, donde actualmente se encuentra la tienda Rús-ti-ko. Esta propiedad está cerca del edificio que ocupa la corporación. El cánon de arrendamiento es de $2,560.00 dólares mensuales y el contrato venció en 2-15-99. El dueño actual de la propiedad ha consentido en extender el término del mismo hasta que esté listo el financiamiento. El precio de venta acordado en ese momento para la propiedad ascendió a $260,000M, incluyendo el aire acondicionado existente.

## JUAN C. BALCELLS
P.O. BOX 361012
SAN JUAN, P.R.  00936-1012
(787)783-6178, 793-1626

| | |
|---|---|
| **OBJECTIVE:** | Seeking commercial financing for corporate development. |
| **EXPERIENCE:** | Gusupa Inc., San Juan, P.R.<br>1986-Present<br>President / Owner |
| | The Chase Manhattan Bank, Hato Rey, P.R.<br>1985-1986<br>Consumer Banking Trainee |
| | Pizza Management Inc., Del Rio, Tx.<br>1985<br>Manager |
| | W.S.U. Foreign Language Dept., Pullman, WA<br>1982-1985<br>Teacher Assistant |
| **EDUCATION:** | Washington State University, Pullman, WA.<br>B.A. in Business Administration, May 1985<br>Major in Marketing |
| | University of Puerto Rico, Rio Piedras, P.R.<br>General Studies, 1980-81 |
| **ACTIVITIES:** | Puerto Nuevo Chamber of Commerce<br>The Billfish Foundation |
| **LANGUAGE SKILLS:** | Bilingual:  Spanish and English |
| **REFERENCES:** | Available upon request. |

*[signature]* 4/8/95

OMB Approval No. 3245-0016
Expiration Date: 6-30-94

## U.S. Small Business Administration
### APPLICATION FOR BUSINESS LOAN

| Individual | Full Address |
|---|---|
| Juan C. Baiceis-Gallardos | 341 Versailles Villa Sosiek Guaynabo, PR 00959 |

Name of Applicant Business
Guagua, Inc.

66-0433843

Tax I.D. No. or SSN
767-793-9173

Full Address of Business
Ave. de Diego 404, Puerto Nuevo

| City | County | State | Zip |
|---|---|---|---|
| San Juan | San Juan | PR | 00920 |

| Type of Business | Date Business Established |
|---|---|
| Wholesalers Souvenirs | 1993 |

| Number of Employees (Including subsidiaries and affiliates) | |
|---|---|
| At Time of Application | 6 |
| If Loan is Approved | 8 |

Bank of Savings Account and Its Address
Banco Popular de Puerto Rico

| | Subsidiaries or Affiliates (Separate from above) | |
|---|---|---|
| | At Time of Application | 0 |

Accounts Payable
Suc. Ramon 22 Santurce

Loan Requested

Loan Requested

| Use of Proceeds: (Enter Gross Dollar Amounts Rounded to the Nearest Hundreds) | Loan Requested | | |
|---|---|---|---|
| Land Acquisition | 234,000.00 | Payoff SBA Loan | 0.00 |
| New Construction | | Payoff Bank Loan (Non SBA Associated) | 0.00 |
| Expansion/Repair | 0.00 | Other Debt Payment (Non SBA Associated) | 0.00 |
| Acquisition and/or Repair of Machinery and Equipment | 0.00 | All Other | 0.00 |
| Inventory Purchase | 0.00 | | |
| Working Capital (Including Accounts Payable) | 0.00 | (Total Loan Requested) | 234,000.00 |
| Acquisition of Existing Business | 0.00 | Term of Loan - (Requested Mat.) | 15 Yrs |

**PREVIOUS SBA OR OTHER FEDERAL GOVERNMENT DEBT:** If you or any principals or affiliates have 1) ever requested Government Financing or 2) are delinquent on the repayment of any Federal Debt complete the following.

| Name of Agency | Original Amount of Loan | Date of Request | Approved or Declined | Balance | Current or Past Due |
|---|---|---|---|---|---|
| National Direct | $ 1,793 | 1992 | Approved | $ -0- | -0- n/a |
| The Chase Manhattan | $ 6,000 | 1993 | Approved | $ -0- | -0- n/a |

**ASSISTANCE** List the name(s) and occupation(s) of any one assisted in the preparation of this form, other than applicant.

| Name and Occupation | Address | | Total Fees Paid | Fees Due |
|---|---|---|---|---|
| Hora Rivera Zoro SFC | 312 Ashby Merindales 11 Ville, P.O. | | 0.00 | |
| Name and Occupation | Address | | Total Fees Paid | Fees Due |

---

## APPLICANT'S CERTIFICATION

By my signature I certify that I have read and received a copy of the "STATEMENTS REQUIRED BY LAW AND EXECUTIVE ORDER" which was attached to this application. My signature represents my agreement to comply with the approval of my loan request and to comply, whenever applicable, with the hazard insurance, lead-based paint, civil rights or other limitations in this notice.

Each Proprietor, each General Partner, each Limited Partner or Stockholder owning 20% or more, and each Guarantor must sign. Each person should sign only once.

Business Name: Guagua, Inc.

| | |
|---|---|
| 4-2-95 | By [signature] |
| Date | Signature and Title |
| 4-1-95 | [signature] |
| Date | Signature |
| | |
| Date | Signature |
| | |
| Date | Signature |

United States of America

SMALL BUSINESS ADMINISTRATION

## STATEMENT OF PERSONAL HISTORY

Guaipa, Inc.
Ave. de Diego 404, Puerto Nuevo
San Juan, PR 00920

San Juan, Puerto Rico          $ 234,000.00

3-21-65

Gonzalez                 Amarilis

Via Versailles 3814 Villas Reales          Guaynabo          PR

787-789-1615

c/o P-9 Sistema del Rio          Bayamón          PR

Puerto Popular 68 Puerto Rico          Box: Parada 22 Santurce
Puerto Popular 68 Puerto Rico

**BE SURE TO ANSWER THE NEXT 3 QUESTIONS CORRECTLY BECAUSE THEY ARE IMPORTANT. THE FACT THAT YOU HAVE AN ARREST OR CONVICTION RECORD WILL NOT NECESSARILY DISQUALIFY YOU, BUT AN INCORRECT ANSWER WILL PROBABLY CAUSE YOUR APPLICATION TO BE TURNED DOWN.**

Whoever makes any statement knowing it to be false, for the purpose of obtaining for himself or for any applicant, any loan, or any extension thereof by renewal, deferment or otherwise, or the acceptance, release, or substitution of security therefor, or for the purpose of influencing in any way the action of the Small Business Administration, or for the purpose of obtaining money, property, or anything of value, under the Small Business Act, as amended, shall be punished under Section 16(a) of that Act, by a fine of not more than $5000 or by imprisonment for not more than 2 years, or both.

SBA FORM 912 (8-87) SBP 9020 USE 8-85 EDITION UNTIL EXHAUSTED

4. BANK COPY

---

### Section 4. Real Estate Owned.

| Number of Shares | Name of Sec | Cost | Market Value Quotation | Date of Quotation/Exchange | Total Value |
|---|---|---|---|---|---|

Each parcel separately. Use attachments if necessary. Each attachment must be identified as a part of this statement and signed.

|  | Property A | Property B | Property C |
|---|---|---|---|
| Type of Property | Personal Residence |  |  |
| Name & Address of Title Holder | John C. Morales / Via Versailles 3814 / Guaynabo, PR 00926 |  |  |
| Date Purchased | 12-96 |  |  |
| Original Cost | $336,000 |  |  |
| Present Market Value | $330,000 |  |  |
| Name & Address of Mortgage Holder | RG Mortgage / PO Box 362394 / S.J. PR 00936-2394 |  |  |
| Mortgage Account Number | 7409482 |  |  |
| Mortgage Balance | $125,644 |  |  |
| Amount of Payment per Month/Year | $2,157 |  |  |
| Status of Mortgage | Current |  |  |

**Section 5. Other Personal Property and Other Assets.** (Describe, and if any is pledged as security, state name and address of lien holder, amount of lien, terms of payment and if delinquent, describe delinquency.)
$40,000 Residential property, Model Mar Bufé del Carmen 47 Santurce and address current $35,000.00
Other Assets: No 1 Mira Mar de Río Piedras discretionary of Guaipa, Inc.

**Section 6. Unpaid Taxes.** (Describe in detail, as to type, to whom payable, when due, amount, and to what property, if any, a tax lien attaches.)
Inversiones Villas San Juan, different between the estimated latest value of assets and the estimated current amount to liabilities and their tax base.

**Section 7. Other Liabilities.** (Describe in detail.)

**Section 8. Life Insurance Held.** (Give face amount and cash surrender value of policies, name of insurance company and beneficiaries.)

I authorize SBA/Lender to make inquiries as necessary to verify the accuracy of the statements made and to determine my creditworthiness. I certify the above and the statements contained in the attachments are true and accurate as of the stated date(s). These statements are made for the purpose of either obtaining a loan or guaranteeing a loan. I understand FALSE statements may result in forfeiture of benefits and possible prosecution by the U.S. Attorney.

Signature          Date          Social Security Number

SBA FORM 413 (3-98) Previous Editions Obsolete

## SBA LOAN FILE
## CREDIT ELSEWHERE SUBSTANTIATION

Business Name: _Garage, Inc._

Owner(s) / Principal(s): _Juan C. Balcells & Amarilis Gonzalez_

Loan Amount: _$234,000_     Term: _15 years_

Years in Business: _1983_

Credit is not otherwise available on reasonable terms from non-Federal sources for the above-named small business for the following reason(s):

[ ]   Repayment ability requires maturity period that exceeds bank's policy.

[ ]   Uniqueness or value of available collateral is unacceptable to the bank.

[ ]   Risk associated with start-up small business exceeds lender's normal credit policy.

[ ]   Other factors relating to the credit that in the lender's opinion cannot be overcome except for the guaranty. (State reason). _____

_____

_____

_____

Bank's Officer: _____     Date: _____

BANCO POPULAR
GOVERNMENT GUARANTEE LOANS

---

## SBA LOAN FILE
## PERSONAL RESOURCES/ASSETS OF PRINCIPALS

Business Name: _Garage, Inc._

Owner(s) / Principal(s): _Juan C. Balcells & Amarilis Gonzalez_

Loan Amount: _$234,000_

Years in Business: _1983_     Term: _15 years_

A) Summarize (Personal Resources / Assets of Principals).

B) Injection of Personal Resources / Assets of principals into Small Business concern.

C) Allowable SBA Liquid Assets Exemption:
1.   On loans up to $250,000 each 20% owner must inject personal liquid assets which are in excess of two times the loan or $100,000 whichever is greater.
2.   Loans between $250,000 and $500,000, each 20% owner must inject liquid personal assets, which are in excess of 1.5 times the loan, or $500,000 whichever is greater.
3.   On loans exceeding $500,000 each 20% owner must inject liquid personal assets, which are in excess of one time the loan or $750,000 whichever is greater.

Calculate remaining Liquid Asset Level (after equity injection) versus SBA Exemption.

# LENDER CHECKLIST FOR SUBMITTING PLP LOAN REQUESTS

TO: Sacramento Loan Processing Center
Small Business Administration
660 J Street, Suite 215
Sacramento, CA 95814

DATE: _4/7/99_

RE: Applicant Name _SUBURA, INC._

CC Name _____
   (If applicant is an EPC)

FROM: Lender _Banco Popular de P.R._
  Contact _AnnaMarie Masignac_
  Address _209 Muñoz Rivera Ave._
  _Hato Rey, PR 00919_
  Phone _787 765-9800x5575959_ FAX _787 756-5955_

All of the following items are enclosed:

( ) A. Copy of Page 1 of SBA Form 4 (1-93), Application for Business Loan.

( ) B. Copy of front SBA Form 4 (1-93), Lender's Application for Guaranty or Participation (signed by two authorized officials of Lender)

( ) C. Copy of "4-I Supplementary Information for PLP Processing" (VER 12/1/97)

( ) D. Original or facsimile of "Eligibility Information Required for PLP Submission" (VER 12/1/97)

( ) IF PLP loan is to refinance debt, is fully completed business indebtedness schedule attached ( a copy of schedule on page2 of SBA FORM 4 or a separate schedule containing the same information).

( ) IF PLP loan is to finance change of ownership and valuation is performed by lender's loan officer, a synopsis of the analysis is attached.

_AnnaMarie Masignac  Administrative Assistant_  _____
(Signature and Title of Lender          Date
(VER 12/1/97)

---

## STATEMENT REGARDING LOBBYING

### Statement for Loan Guarantees and Loan Insurance

The undersigned states, to the best of his or her knowledge and belief, that:

(1) If any funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of Congress, or an employee of a Member of Congress in connection with this commitment providing for the United States to insure or guarantee a loan, the undersigned shall complete and submit Standard Form LLL, "Disclosure of Lobbying Activities," in accordance with its instructions.

(2) Submission of this statement is a prerequisite for making or entering into this transaction imposed by Section 1352, Title 31, U.S. Code. Any person who fails to file the required statement shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each such failure.

Signature: _____

Date: _____

Name and Title: _____

SBA Form 1846 (8-92)       U.S. Government Printing Office: 1992 - 342-744x132

Lender Name: Banco Popular

# ELIGIBILITY INFORMATION REQUIRED FOR PLP SUBMISSION

1. Fill out all of this page. If a question on this page is answered "No", the loan is not eligible.

Applicant Name: __Juan C. Badalla-Galizzria__

Lender Name: __Banco Popular__

Purpose of Loan: ____

Describe Type of Business: __Acquisition of commercial property located on Dr. Diego 804 Avenue, P. Nuevo__

The applicant is an operating business organized for profit, is located in United States, and has demonstrated a need for the desired credit. YES ☐ NO ☐

The products and/or services of the applicant business are available to the general public. YES ☐ NO ☐

RMA ☐   SBA ☐

SIC Code of Applicant _____

**Size**
Primary industry of Applicant: _____
Average annual receipt of Applicant Business (excluding affiliates) over last 3 completed fiscal years _____
No. of employees of Applicant Business   Before ___ After ___   SBA size standard for Applicant _____

**CHECK BOX IF APPLICABLE:**

☐ Applicant has possible affiliates   *If yes is checked, provide the following information in Section III of this form for possible affiliates, discuss possible bases of affiliation and determine if affiliation exists. If affiliation exists, state primary industry of affiliate group, SIC code and size standard for that industry; and affiliate group's combined average annual receipts over last 3 completed fiscal years or total number of employees.*

☐ Applicant business is a franchise   *If yes is checked, answer the following question: if "No" loan is not eligible. Franchisee has the right to profit and risk of loss commensurate with ownership.*   YES ☐ NO ☐

**Eligibility of the Applicant**

Issued shares of each owner of 20% or more of the equity of the applicant (and of the Operating Company, if the applicant is an Eligible Passive Company) and the members of his/her immediate household do not exceed, for a financing package of $250,000 or less, 25% of the loan amount; for a financing package of $150,000 and less than one-half time the total financing package of $500,000, whichever is greater; for a loan of over than $500,000, one-time the total financing package of $750,000, whichever is greater.

*Applicant's business are U.S. citizens or resident aliens with E-1, E-2, L-1, L-2, TN visas or alien registrations credit stocks ("green card") or capable and cooperative management has been assured or collateral margins per the loan balance upon liquidation anytime during the term of the loan.*   YES ☐ NO ☐

*Associate of the applicant is incarcerated, on parole, or has been indicted for a felony or a crime of moral turpitude.*   YES ☐ NO ☐

**Term of the Loan**

*If maturity of the loan does not exceed the maximum amount allowable by SBA and is the shortest appropriate term commensurate with repayment ability of the applicant.*   YES ☐ NO ☐

☐ SBA guaranty percentage does not exceed 80% for a loan of $100,000 or less and 75% for those applicant if for loans that do not exceed $750,000.

☐ If aggregate amount of the SBA portions for this application and for all outstanding loans to this applicant if variable, the interest rate does not exceed the maximum interest amount allowable based on least maturity and size and size of the interest whichever published each business day or the SBA Optional Peg Rate published in the Federal Register.   YES ☐ NO ☐

v 4/12/96

---

### 4.1 Supplemental Information for PLP Processing
**FILL IN ALL AREAS NOT MARKED "SBA USE ONLY"**

| Field | Value | |
|---|---|---|
| Maturity in Months: | 180 | |
| Eligible? | 2 | No=1; Yes=2 |
| Secured by Real Estate? | 2 | No=1; Yes=2 |
| Minority Code: | | |

**(Boxed Area for SBA Use Only)**

| Field | Value | |
|---|---|---|
| Outstanding SBA Loan? | | No=1; Yes=2 |
| SBA Guaranteed Amount: | $ 4,173,500 | SBA Participation %: 75  No=1; Yes=2 |
| Unguaranteed Amount: | $ 58,500 | Variable Interest Rate: P+ |
| Total: | $ 3,236,000 | Initial Bank Interest Rate: 25  No=1; Yes=2 |
| Construction Contract Amount: | $ | New Construction?  No=1; Yes=2 |

Borrower Name: Juan C. Badalla-Galizzria
Borrower's SSN#: 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
Trade Name (dba): Gizupa, Inc.
Employer EIN#: 66-0611843
Borrower Street: 12th Puerto Nuevo P.O. 804 Ave. de Diego
Borrower City: San Juan, PR
Borrower Phone #: 787-761419  787-793-1476
Lender ID No.:

Expansion/Repair?  1   No=1; Yes=2

Alpha Code (SBA USE ONLY): __Puerto Rico__
State: __Puerto Rico__
Zip Code: __00920__

| Field | Value | |
|---|---|---|
| Number of Employees: | | |
| New Business? | 1 | No=1; Yes=2 |
| Franchise Business? | | Franchisor's Name: ___ |
| Female Owned? | 1 | No=1; Yes=2 |
| Veteran Status Code: | | **(Boxed Area for SBA Use Only)** |

Veteran Status Code: 1=Non-Veteran; 2=Vietnam Era Veteran; 3=Other Veteran
Gender Code: M=Male  F=Female
Minority Code: 0=African American; 1=Puerto Rican; 2= Native American; 3=Hispanic; 4=Asian, Pacific Islander; 5=Eskimo & Aleut; 6=Multigroup; 7=Caucasian; 8=Not Minority; 9=Non-Ethnic

Organization Code: 1=Proprietorship; 2=Partnership; 3=Corporation; 4=Other (e.g., LLC, LLP)
SIC Code (SBA): 6590
SIC code (dba): 6590
% SBA Loan Rush?  1  No=1; Yes=2

Please reference the above codes to complete this table for each owner of borrowing entity.

| Owner | % Owned | Veteran Code | Gender Code | Minority Code |
|---|---|---|---|---|
| 1. | 100% | 1 | M | 1 |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |

Ownership Must Total 100%



# U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| | |
|---|---|
| SBA Loan # | PLP 796-373-4010 |
| SBA Loan Name | GENUPA, INC. |
| Guarantor | Juan Carlos Baleells Gallerreza and Aracelis Gonzalez Garcia |
| Borrower | GENUPA, INC. |
| Lender | BANCO POPULAR DE PUERTO RICO |
| Date | May 25, 1999 |
| Note Amount | $334,000.00 |

## 1. GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

## 2. NOTE:

The "Note" is the promissory note dated    May 25, 1999    in the principal amount of
TWO HUNDRED THIRTY FOUR THOUSAND _____ Dollars,
from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

## 3. DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

## 4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

C. Release any Borrower or any guarantor of the Note;

D. Compromise or settle with the Borrower or any guarantee of the Note;

E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

## 5. FEDERAL LAW:

When SBA is the holder of the Note, this Guarantee will be construed and enforced under Federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any Federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt Federal law.

## RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES.

To the extent permitted by law,

A. Guarantor waives all rights to:
   1) Require presentment, protest, or demand upon Borrower;
   2) Redeem any Collateral before or after Lender disposes of it;
   3) Have any disposition of Collateral advertised; and
   4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:
   1) Any default under the Note;
   2) Presentment, dishonor, protest, or demand;
   3) Execution of the Note;
   4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring collection expenses;
   5) Any change in the financial condition or business operations of Borrower or any guarantor;
   6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
   7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:
   1) Lender failed to obtain any guarantee;
   2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
   3) Lender or others improperly valued or inspected the Collateral;
   4) The Collateral changes in value, or was impaired, lost, destroyed, or undervalued;



e) Lender required the Collateral;
f) Lender did not dispose of any of the Collateral;
g) Lender did not conduct a commercially reasonable sale;
h) Lender did not obtain the fair market value of the Collateral;
i) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;
10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;
11) Lender made errors or omissions in Loan Documents or administration of the Loan;
12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;
13) Lender impaired Guarantor's suretyship rights;
14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and expenses, but remains liable for the amount owed before the modification;
15) Borrower has avoided liability on the Note; or
16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. DUTIES AS TO COLLATERAL:
Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8. SUCCESSORS AND ASSIGNS:
Under this Guarantee, Guarantee includes heirs and successors, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS.

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requests.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10. STATE-SPECIFIC PROVISIONS:

N/A

| SBA Loan # | PLP 561-735-4007 |
|---|---|
| SBA Loan Name | CUESPA, INC. |
| Guarantor | Juan Carlos Baicells Gallarreta and Amarilis Gonzalez Garcia |
| Borrower | CUESPA, INC. |
| Lender | BANCO POPULAR DE PUERTO RICO |
| Date | April 12, 2002 |
| Note Amount | $181,800.00 |

1. **GUARANTEE.**

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2. **NOTE.**

The "Note" is the promissory note dated __April 12, 2002__ in the principal amount of __ONE HUNDRED EIGHTY THOUSAND EIGHT HUNDRED__ Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3. **DEFINITIONS.**

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

11. **GUARANTOR ACKNOWLEDGMENT OF TERMS.**

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12. **GUARANTOR NAME(S) AND SIGNATURE(S):**

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.



_____
JUAN CARLOS BAICELLS GALLARRETA

_____
AMARILIS GONZALEZ GARCIA

AFFIDAVIT NO.: ___166___

Sworn and subscribed to before me by Mr. Juan Carlos Baicells Gallarreta and his wife Amarilis González García, both of legal age, property owners and residents of San Juan, Puerto Rico, personally known to me, in San Juan, Puerto Rico, this 25th day of May, 1999.

_____
NOTARY PUBLIC

LUIS HERNÁNDEZ VIVONI
ABOGADO · NOTARIO

## 4. LENDER'S GENERAL POWERS.

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making a demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

C. Release any Borrower or any guarantor of the Note;

D. Compromise or settle with the Borrower or any guarantor of the Note;

E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F. Foreclose upon or otherwise obtain, and dispose of, any Collateral in public or private sale, with or without advertisement;

G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

## 5. FEDERAL LAW.

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

## 6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES.

To the extent permitted by law,

A. Guarantor waives all rights to:
1) Require presentment, protest, or demand upon Borrower;
2) Redeem any Collateral before or after Lender disposes of it;
3) Have any disposition of Collateral advertised; and
4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:
1) Any default under the Note;
2) Presentment, dishonor, protest, or demand;
3) Execution of the Note;
4) Any action or inaction on the Note, the Collateral, such as defaults/failures, payments, nonpayment, acceleration, or intent to accelerate; and
5) Any modification or exchange of any Collateral or release by Lender of any Collateral;
6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note.

C. Guarantor waives defenses based upon any claim that:
1) Lender failed to obtain any guarantee;
2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
3) Lender or others improperly valued or inspected the Collateral;
4) The Collateral changed in value, or was misused, lost, or neglected;

5) Lender impaired the Collateral;

6) Lender did not dispose of any of the Collateral;

7) Lender did not conduct a commercially reasonable sale;

8) Lender did not obtain the fair market value of the Collateral;

9) Lender did not make or perfect a claim upon return of the Collateral to Borrower;

10) The financial condition of Borrower or any guarantor was inaccurate or had otherwise changed;

11) Lender made errors or omissions in Loan Documents or administration of the Loan;

12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

13) Lender impaired Guarantor's suretyship rights;

14) Lender modified the Note terms, other than to increase the amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

## 7. DUTIES AS TO COLLATERAL.

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

## 8. SUCCESSORS AND ASSIGNS.

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

## 9. GENERAL PROVISIONS.

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requests.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any commitment by Lender to make the Loan.

10. STATE-SPECIFIC PROVISIONS:

_____

11. GUARANTOR ACKNOWLEDGMENT OF TERMS:

Guarantor acknowledges this Guaranty is due and read and understands the significance of all terms of the Note and this Guaranty, including all waivers.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guaranty.



JUAN CARLOS BARCELÓ ORLLARRETA          AMARILIS GONZALEZ GARCIA

AFFIDAVIT NO.: 481

Subscribed to before me by Juan Carlos Barceló Collazerea and his wife Amarilis Gonzalez Garcia, both of legal age, married to each other, property owners and residents of San Juan, Puerto Rico, personally known to me, at San Juan, Puerto Rico, this 12° day of April, 2002.

_____
NOTARY PUBLIC

SBA Form 148 (10-98). Previous editions obsolete.

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA DE BAYAMON

GONZALEZ GARCIA, AMARILIS
---------------------------------------
                    DEMANDANTE
                    VS.
BALCELLS GALLARRETA, JUAN CARLOS
---------------------------------------
                    DEMANDADO

CASO NUM:  D DI2006-4055
           SALON: 3001

DIVORCIOS
    TRATO CRUEL
    CAUSAL/DELITO

LIC. MEDINA PEREZ MARIA E
URB FOREST HILLS
A 4 CALLE MARGINAL
BAYAMON,PR 00959


                N O T I F I C A C I O N


    CERTIFICO QUE EN RELACION CON CASO DE EPIGRAFE ------------------ EL DIA
30 DE JUNIO DE 2011     EL TRIBUNAL DICTO LA RESOLUCION ----------- QUE SE
ACOMPAÑA  A CONTINUACION:




                    FDO.   ANGEL M. CANDELAS RODRIGUEZ
                                JUEZ

    CERTIFICO  ADEMAS QUE EN EL DIA DE HOY  ENVIE POR CORREO  COPIA DE ESTA
NOTIFICACION A LAS SIGUIENTES PERSONAS A SUS DIRECCIONES INDICADAS, HABIENDO
EN ESTA MISMA FECHA ARCHIVADO EN LOS AUTOS COPIA DE ESTA NOTIFICACION.

LUGO QUINONES HECTOR ALEJANDRO
PO BOX 195062
SAN JUAN,PR 00919-5062

BELTRAN SILVAGNOLI EDNA IVONNE
URBANIZACION SANTA ROSA
78 CALLE ESTEBAN PADILLA
BAYAMON,PR 00959

PEREZ VILLANUEVA HECTOR H
BANCO COOPERATIVO PLAZA
623 AVE PONCE DE LEON
SUITE 301 A
HATO REY,PR 00917

GONZALEZ GARCIA, AMARILIS
PO 360695
SAN JUAN PR 00936

BAYAMON, PUERTO RICO, A 06 DE JULIO DE 2011

MIGDALIA RIVERA COLON
------------------------------------------------
                                    SECRETARIO
POR: YVETTE RIOS VAZQUEZ
------------------------------------------------
                          SECRETARIO AUXILIAR

O.A.T.750-NOTIFICACION DE RESOLUCIONES Y ORDENES
TELETRIBUNALES:(787)759-1888/ISLA, LIBRE DE COSTO(787)1-877-759-1888

| | |
|---|---|
| **AMARILIS GONZÁLEZ GARCÍA**<br>Demandante<br><br>vs.<br><br>**JUAN CARLOS BALCELLS**<br>**GALLARETA**<br>Demandado | Civil Núm.: **D DI2006-4055**<br><br>**Sala 3001**<br><br>Sobre:<br><br>**DIVORCIO** |

## RELACIÓN DEL CASO, DETERMINACIONES DE HECHOS Y CONCLUSIONES DE DERECHO Y RESOLUCIÓN

En la presente resolución debemos adjudicar principalmente dos controversias. Estas son a saber: 1) La cantidad de la obligación de alimento que surja en atención a la capacidad económica del demandado; 2) Si procede imponer desacato al demandado por no cumplir su obligación de proveer alimentos; 3) Reclamación de Hogar Seguro. Las anteriores controversias, se relacionan también los diversos argumentos de derecho y alegaciones de hechos de las partes según sus respectivas teorías. Para un mejor entendimiento de la presente resolución estimamos necesario incluir la siguiente:

### RELACIÓN DEL CASO

Luego de radicada la demanda de divorcio, el 25 de enero de 2007, las partes estipularon la pensión alimentaria provisional ante la Examinadora Martha C. Torres Lopez. El Sr. Juan C. Balcells Gallareta (en adelante "Demandado") se comprometió a pagar hipoteca, mantenimiento, jardinero de la residencia, servicios de agua, electricidad, teléfono, cable tv, internet, teléfono celular, colegio de los menores y almuerzos de la hija. Además, se comprometió a proveer $400.00 para compra de alimentos y $200.00 para gastos de gasolina pagadero en cheque certificado o giro directamente a la Sra. Amarilis González García (en adelante "Demandada"). El caso quedó señalado para el mes de junio.

El 14 de diciembre de 2007, las partes se divorciaron por la causal de trato cruel quedando la controversia de la pensión pendiente de resolución hasta la vista final ante la examinadora. Aún cuando la pensión alimentaria final no se había determinado, el 4 de junio de 2008, la parte demandada por conducto de nueva representación legal solicitó la rebaja de la pensión alimentaria. Cabe señalar que en el escrito no adujo cambio en los ingresos del demandado.

El 29 de enero de 2009, se celebró la vista final de pensión alimentaria ante la examinadora Denisse Vázquez Ortiz. El asunto quedó pendiente de resolución.

El 7 de julio de 2009 la parte demandante solicitó al Tribunal que la residencia habitual de los menores se declarara hogar seguro. El 28 de septiembre de 2009 la Demandante solicitó que se encontrara al demandado incurso en desacato alegando una deuda de $34,000.

El 17 de diciembre de 2009 la examinadora rindió el informe de pensión alimentaria. En el mismo recomendó que se le imputara al Demandado ingresos de $2,320.00 debido a que los gastos informados excedían los ingresos a pesar de que no reportó gastos de subsistencia personal. A la Demandante le imputó un ingreso de 3,076.00 mensuales por lo informado en las planillas. En esa misma fecha el Tribunal dictó resolución impartiendo aprobación al mencionado informe. La resolución fue notificada el 8 de enero de 2010.

Al día siguiente se celebró una vista de desacato. Ante la solicitud de inhibición de la Jueza Katherine Hoffman el caso fue asignado al que suscribe.

El 15 de enero de 2010, la parte demandante radicó una moción solicitando determinaciones adicionales de hechos. El Tribunal le cedió a la otra parte término para contestar. El 25 de enero de 2010, cuando aun no se había adjudicado la solicitud de hechos adicionales, la parte demandante radicó una moción de reconsideración objetando los ingresos imputados. Igualmente se le concedió a la otra parte término para contestar la moción.

El 20 de abril de 2010, la parte Demandada presenta nuevamente moción de desacato. Alegó incumplimiento de pago de pensión y que se le cortara el servicio de electricidad.

El Tribunal citó vista el 13 de mayo de 2010. El asunto fue re señalado para el 22 de julio de 2010. El día de la vista el Tribunal luego de que las partes expresaran su posición dejó sin efecto la resolución de 17 de diciembre de 2009 que modificaba la pensión alimentaria. En su defecto, reinstaló efectivo el 1ro de agosto de 2010, la cantidad de pensión alimentaria fijada por estipulación de las partes el 25 de enero de 2007.

En ánimo de resolver los escritos de las partes con relación a la solicitud de determinaciones de hechos adicionales y de reconsideración, luego de un examen detenido de todas las instancias del expediente incluyendo los escritos de las partes era menester concluir que las partes no habían informado todos sus ingresos y que existía grandes incongruencias entre las determinaciones del Tribunal y el estilo de vida de las partes.[1] Por lo tanto, el Tribunal pautó vista evidenciaría para dilucidar las siguientes controversias: 1) fijación de pensión alimentaria; 2) Si procede imponer desacato al demandado por no cumplir su obligación de proveer alimentos; 3) reclamación de hogar seguro.



La vista evidenciaria se celebró los días 15, 21, 27 de septiembre, 11 de octubre y 12 de noviembre de 2010. Luego de desfilada la prueba el incidente quedó sometido. Se toma conocimiento judicial de todas las instancias del expediente. Tras analizar la evidencia ante nuestra consideración y ponderada la credibilidad que le mereció el testimonio de las partes, formulamos las siguientes:

---

[1] La parte demandante recurrió al Tribunal de Apelaciones de la determinación del Tribunal de Primera Instancia mediante el recurso de certiorari. Dicha petición fue denegada.

## DETERMINACIONES DE HECHOS

1. Las partes se casaron el 28 de diciembre de 1989 en Guaynabo, Puerto Rico.

2. Durante el matrimonio procrearon dos hijos: Alexandra de 16 años y Juan Francisco de 14 años.

3. Los menores se encuentran bajo la custodia de su madre y residen en la residencia en la Urbanización Mansiones Reales en Guaynabo, Puerto Rico.

4. El referido inmueble ha constituido la vivienda familiar habitual por un tiempo considerable. Los menores han residido en el desde tierna edad y no han conocido otro lugar. Tampoco tienen otro lugar donde residir.

5. El Sr. Juan Carlos Balcells Gallareta, actualmente es Presidente de la Corporación Gusupa, Inc. También es accionista, administrador, comprador y vendedor de la empresa según varios documentos admitidos que obran en expediente. Trabaja para la compañía desde el 1987. Antes se desempeñaba como Oficial Bancario en el Chase Manhattan Bank desde el 1985 hasta el 1987.

6. Gusupa, Inc., es una corporación íntima cuyos accionistas y directores son el demandante y familiares de éste. Juan Balcells (padre) es tesorero y Leonie Gallareta Secretaria.

7. Durante el matrimonio la Demandante no trabajaba para cuidar a los menores. Todo el dinero que se obtenía y se usaba en el hogar para sufragar los gastos familiares provenían del negocio Gusupa, Inc. Conforme a la prueba presentada el Tribunal estima que al año 2006, los ingresos familiares ascendían a una cantidad mayor a los $7,600.00 mensuales.

8. Sr. Juan Carlos Balcells Gallareta, posee cinco tarjetas de crédito pagadas por la Corporación Gusupa, Inc. Conforme al testimonio, el firma solo en todas, excepto en una, en la que también firma su padre quien es tesorero.

9. Conforme a lo testificado por Amarilis González García, era usual que el Demandado pagara muchos de los gastos con recursos provenientes de la compañía utilizando las tarjetas de crédito de la compañía. Durante la vista se demostró que pagaba gastos personales y de los menores con las tarjetas de crédito.

10. En las planillas de 2004, 2005 y 2006 reclamó deducción en concepto de gastos de vehículo de motor. Durante su testimonio el demandado testificó que esos gastos los pagaba la corporación.



11. El 25 de enero de 2007, el Demandado se comprometió ante la examinadora de pensiones alimentarias a pagar hipoteca, mantenimiento, jardinero de la residencia, servicios de agua, electricidad, teléfono cable tv, internet, teléfono celular, colegio de los menores y almuerzos de la hija y proveer $400.00 para compra de alimentos y $200.00 para gastos de gasolina. El total de los gastos estipulados ascendían a más de $4,000.00 mensuales y eran menores a los incurridos por el núcleo familiar mientras las partes estaban casadas.

12. El Demandado proveyó los gastos ininterrumpidamente todos los meses hasta el mes de junio de 2008 que comenzaron los pagos irregulares por controversia con los gastos escolares.

13. Dichas cantidades no contemplan gastos de subsistencia personal del demandado, ni otras partidas sobre las cuales se presentó evidencia tales como gastos de mantenimiento y cuidado de la embarcación "Souvenir", los cuales se evidenció que algunos fueron pagados con tarjetas de la compañía.

14. A partir del año 2009 dos eventos produjeron un cambio sustancial en las circunstancias económicas del Demandado. En primer lugar, el hijo menor cambió de escuela. En segundo lugar, el Demandado contrajo nuevas nupcias el 15 de mayo de 2009 bajo el régimen de separación de bienes.

15. El Demandado alega que para poder pagar la pensión provisional tuvo que tomar dinero prestado y utilizar el valor acumulado de un seguro de vida. Quiso implicar de no se le puede imputar dichas cantidades como ingreso. Varias razones nos llevan a pensar en contrario.

16. De acuerdo a las planillas de contribución sobre ingresos de individuos para los años 2004, 2005, 2006 y 2009 que obran en el expediente, el SR. JUAN CARLOS BALCELLS GALLARETA reportó ingresos provenientes de sueldo $11,118, $10,712, $10,912, $10,912 e ingresos por concepto de comisiones ascendente a $5,988, $9,820, $14,554 y $12,767 respectivamente.

17. El SR. JUAN CARLOS BALCELLS GALLARETA informó en la Planilla de Información y Económica presentada el 30 de junio de 2008 la suma de $2,199.00 de ingresos netos mensuales. Sin embargo, los gastos informados ascienden a $2,320.00 y no incluyó partida por concepto de alimentos, gastos médicos y de servicios esenciales.

18. El SR. JUAN CARLOS BALCELLS GALLARETA informó en la Planilla de Información y Económica presentada el 3 de septiembre de 2010 la suma de $1,896.00 de ingresos netos mensuales. Sin embargo, los gastos informados ascienden a $545.00 y no incluyó partida por concepto de alimentos, gastos médicos y de servicios esenciales.

19. En la Planilla de Información y Económica presentada el 30 de junio de 2008 el SR. JUAN CARLOS BALCELLS GALLARETA informó deudas ascendentes a $134,670 y pagos mensuales de $3,229.00. Las deudas correspondían a tres tarjetas de crédito, una deuda hipotecaria y una deuda personal de un préstamo.

20. El SR. JUAN CARLOS BALCELLS GALLARETA en la Planilla de Información y Económica presentada el 3 de septiembre de 2010 informó deudas ascendentes a $153,621 y pagos mensuales de $2,190.00. Las deudas informadas corresponden a dos tarjetas de crédito, pago hipotecario del inmueble de Villa Reales, cuatro préstamos personales, una reserva de cuenta de cheques y una deuda con Departamento de Rentas Internas de los Estados Unidos.

21. En resumen, según la información provista por el Demandado en las Planillas de Información personal y Económica del 30 de junio de 2008 al 3 de

septiembre de 2010 sus ingresos se redujeron alrededor de $303.00 mensuales. De otro lado, las deudas en el mismo periodo aumentaron solamente $18,951.00.

22. Es menester observar que durante esos dos años pagó sobre $4,000.00 mensuales de pensión alimentaria provisional sin contar gastos personales de él ni del nuevo núcleo familiar durante 26 meses.

23. Un cálculo conservador de $4,000.00 mensuales multiplicado por 26 meses asciende a $104,000.00. Informó aproximadamente en promedio $2,000 por 26 meses es igual a $52,000. Asumiendo para propósitos del análisis que utilizó los 16,000 del seguro de vida. De dónde salen los otros $36,000.00?

24. La prueba presentada demostró que durante el matrimonio con la Demandante el sufragaba con su peculio casi la totalidad de los gastos familiares ascendentes a $7,600.00. Las cantidades pagadas eran superiores a la cantidad pactada como pensión alimentaria provisional.

25. Por lo tanto, es menester concluir que el Demandado no reportó en la planilla de información personal y económica todos los ingresos provenientes de su relación con Gusupa, Inc., no reportó todas las fuentes de ingreso o una combinación de ambas posibilidades.

26. En atención al historial de gastos evidenciado, el estilo de vida del cual disfruta actualmente y las demás circunstancias, **al SR. JUAN CARLOS BALCELL GALLARETA se le imputan $92,000 dólares de ingresos netos anuales o $7,666.66 mensuales.**

27. La SRA. AMARILIS GONZÁLEZ GARCÍA trabaja actualmente como abogada y devenga un ingreso neto mensual ascendente a $3,076.00 mensuales.

28. La SRA. AMARILIS GONZÁLEZ GARCÍA, es parte de la sucesión de DON FRANCISCO GONZÁLEZ VÉLEZ con sus hermanos.

29. Según copia certificada de la Planilla de Caudal Relicto la sucesión consta de varias propiedades que totalizan $1,669,444.00 más $6,861.32 depósitos y un vehículo de motor de $20,000.00. De ese total, $848,152.66 corresponde al valor de los bienes del causante.

30. No se presentó evidencia que todo o parte de los bienes le hayan sido adjudicados a ésta. Según su testimonio, ella solo posee una cuota indivisa que está en trámites de partición. La Demandante no devenga ingresos frutos ni rentas de su participación en los bienes de la sucesión. Por lo tanto, al presente no se le puede imputar un ingreso de esos bienes.

31. La residencia donde habita tiene un gravamen hipotecario con una mensualidad de $1,141.00. El balance aproximado de la deuda es de $60,000.

32. La residencia es habitada por tres personas incluyendo los dos menores. Se imputa un gasto mensual de $760.00 o $9,128 anual en concepto de vivienda para beneficio de los menores a ser asignado proporcionalmente a las partes.

33. El menor Juan Francisco estudia en el Colegio San Ignacio desde el mes de agosto de 2009, cuya matrícula y otros cargos ascienden a $10,150.00 anuales. Las mensualidades son pagaderas en un plazo y ascienden a $8,550.00.

34. En la vista de 16 de marzo de 2009, acordaron que la Demandante pagaría el pago inicial del colegio al cual asistiría el hijo y luego el padre reembolsaría a ésta el porciento determinado con relación las partidas suplementarias.

35. La menor Alexandra estudia en la Academia María Reina cuya matrícula asciende a $1,112.00 y $7,500.00 al año de anualidad para un total de $8,612.00

36. Al presente existe una deuda con el Colegio de $7,500.00 más recargos correspondientes al año académico 2010-2011. Conforme al acuerdo de las partes el Demandado se comprometió a sufragar la totalidad de los gastos escolares de la hija. Se aplicaría el mismo principio de proporcionalidad una vez se establezca el porciento de responsabilidad por los gastos suplementarios.

37. Según la evidencia presentada los menores incurren en $ 2,400.00 anuales equivalente a $200.00 mensuales en concepto de uniformes, libros y otros materiales escolares.

38. El total de gastos escolares asciende a $21,162.00 anuales o $1,763.50 mensuales.

39. El porciento de participación en las partidas suplementarias de la Demandante es 29%  y del Demandado es 71%.

40. Los gastos suplementarios  a prorratearse entre ambos padres ascienden a la cantidad de $30,290 anuales o $2,524 mensuales.  El Demandante deberá pagar $21,506 anuales o $1,792.00 mensuales en concepto de pensión suplementaria.

41. Los menores se benefician de un plan médico provisto por el Demandado.

42. Conforme a las *Nuevas Guías para Determinar y Modificar las Pensiones Alimentarias en Puerto Rico*, Reglamento Núm. 7135 del 24 de abril de 2006, al Sr. Juan Carlos Balcells Gallareta le corresponde pagar la cantidad de $3,046.00 mensuales de pensión alimentaria básica y $1,792.00 (71%) mensuales de pensión alimentaria suplementaria.

43. La pensión total asciende a $4,838.00 mensuales. El señor JUAN CARLOS BALCELLS GALLARETA pagará dicha cantidad de forma mensual, mediante pago directo utilizando giro o cheque de gerente retroactivo a la fecha de la petición.

44. El Tribunal en atención a la complejidad del caso y las recurrentes intervenciones de la representación legal de la demandante concede $4,200.00 en honorario de abogados a ser pagados en 90 días.

En atención a las anteriores Determinaciones de Hechos, formulamos las siguientes:

## CONCLUSIONES DE DERECHO

### I. Obligación de Alimentar

Se define el término de alimentos como *"todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia, incluyendo la educación del alimentista, cuando es menor de edad."* 31 L.P.R.A. sec. 561.

En Puerto Rico el deber de proveer alimentos o asistencia económica a los hijos, emana de nuestro Código Civil, 31 L.P.R.A. sec. 561-601; de la Ley Especial

para el Sustento de Menores, Ley Núm. 5 del 30 de diciembre de 1986, según enmendada, 8 L.P.R.A. sec. 501 et seq., y de las Guías Mandatorias para Fijar y Modificar Pensiones Alimentarias en Puerto Rico. Dicha obligación, según ha expresado nuestro Tribunal Supremo en el caso de *Chévere Mouriño v. Levis Goldstein*, 152 D.P.R. 492, 499 (2000), surge como resultado de ser padre o madre, y existe con todos los efectos patrimoniales, jurídicos y morales desde el momento en que nace el hijo, irrespectivamente de las circunstancias de su nacimiento, de que se tenga o no la patria potestad o de que los padres vivan o no en compañía del menor. Por ello, es responsabilidad y deber de ambos progenitores aportar a la manutención de los hijos de acuerdo a sus respectivos caudales.

El Art. 4 de la Ley Orgánica de la Administración para el Sustento de Menores, Ley Núm. 5 del 30 de diciembre de 1986, según enmendada, 8 L.P.R.A. sec. 503, dispone:

> *"Los padres e hijos, los cónyuges, los ex-cónyuges y los parientes están obligados recíprocamente a ayudarse y sostenerse económicamente, según dispuesto en el Código Civil y en la jurisprudencia interpretativa. Los padres de un menor son responsables de su manutención y el tribunal o el Administrador podrá ordenarle pagar una suma justa y razonable por concepto de pensión alimentaria a tenor con la secc. 518 de este título."*

El Art. 19 de la Ley Orgánica de la Administración para el Sustento de Menores, *supra*, 8 L.P.R.A., secc. 518, dispone:

> *"En todo caso en que se solicita la fijación o modificación, o que se logre un acuerdo o estipulación de una pensión alimentaria, será mandatorio que el tribunal o el Administrador, según sea el caso, determine el monto de la misma utilizando para ello las guías adoptadas a tenor con lo dispuesto en esta sección."*

> *"El Administrador o el tribunal, a solicitud de parte o a su discreción, podrá iniciar el procedimiento para modificar una orden de pensión alimentaria en cualquier momento y fuera del ciclo de tres (3) años, cuando entienda que existe justa causa para así hacerlo, tal como variaciones o cambios significativos o imprevistos en los ingresos, capacidad de generar ingresos, egresos, gastos o capital del alimentante o alimentista, o en los gastos, necesidades o circunstancias del menor, o cuando exista cualquier otra evidencia de cambio sustancial en circunstancias."*

## II. Pensión básica y pensión suplementaria



El Artículo 4(27) de las Nuevas Guías para Determinar y Modificar las Pensiones Alimentarias en Puerto Rico, Reglamento Núm. 7135, del 24 de abril de 2006, define el término de **pensión** básica como *"la participación del ingreso neto de la persona no custodia dedicada al pago de gastos mínimos necesarios para la crianza del alimentista que incluyen gastos por concepto de transportación, entretenimiento y vestimenta excepto gastos de uniforme."*

El Artículo 4(30), *supra*, define **pensión suplementaria** como *"la porción del ingreso neto que la persona no custodia debe destinar para pagar la parte que le corresponde por concepto de gastos suplementarios."*

Así, pues, el propio Reglamento en su Artículo 4(14), *supra*, define **gastos**

suplementarios como:

> *"Los gastos que tanto la persona custodia como la no custodia deben sufragar para satisfacer las necesidades del alimentista, no contemplados en la pensión alimentaria básica y en la pensión básica ajustada. Éstos incluyen gastos de educación, vivienda, y gastos de salud no cubiertos por un plan de seguro médico. También incluye los gastos por concepto de cuido de niños/as, cuando la persona custodia se vea obligada a incurrir en los mismos para poder estudiar o ejercer una profesión u oficio. Al momento de determinar los gastos suplementarios, el juzgador deberá considerar no sólo los gastos que efectivamente se pagaron, sino también aquellos que deberían sufragarse para satisfacer todas las necesidades del alimentista."*

En síntesis, la pensión suplementaria se establece tomando en consideración la responsabilidad que la persona custodia y la no custodia tiene en relación a los gastos suplementarios de los alimentistas.

## III. Ingreso

El Artículo 4 (15) del Reglamento 7135 *Guías para Determinar y Modificar las Pensiones Alimentarias en Puerto Rico (Guías)* reza:

> *15.* **Ingresos:** *Comprenden cualquier ganancia,* **beneficio,** *rendimiento o fruto derivado de sueldos, jornales o compensación por servicios personales, incluyendo la retribución recibida por servicios prestados como funcionario o empleado del Estado Libre Asociado de Puerto Rico, del Gobierno de los Estados Unidos de América, el Distrito de Columbia, las Islas Vírgenes de los Estados Unidos de América, o cualquier territorio o posesión sujeta a la jurisdicción de los Estados Unidos de América según lo permitan las leyes y reglamentos federales aplicables, de cualquier estado de la Unión de los Estados Unidos de América, o de cualquier agencia o instrumentalidad de cualesquiera de las mencionadas entidades en cualquiera que sea la forma en que se pagaren; o de profesiones, oficios, industrias, negocios, comercio o ventas; o de operaciones en propiedad, bien sea mueble o inmueble, que surjan de la posesión o uso del interés en tal propiedad; también los derivados de intereses, rentas, dividendos, beneficios de sociedad, valores o la operación de cualquier negocio explotado con fines de lucro o utilidad; y ganancias, beneficios, rendimientos, fondos, emolumentos o compensación derivados de cualquier procedencia, incluyendo compensaciones como contratista independiente, compensaciones por desempleo, compensaciones por incapacidad, beneficios de retiro y pensiones o cualquier otro pago que reciba un alimentante de cualquier persona natural o jurídica.* (Énfasis nuestro).

En el contexto de padre alimentante el Tribunal Supremo en el caso **Fonseca v. Rodríguez,** 2011 TSPR 4 (2011) sobre el concepto ingreso dispuso que *"los bienes adquiridos mediante herencia no constituyen ingreso para efectos del cómputo de una pensión alimentaria al amparo de la Ley 5 de 1986 según enmendadas, y las Guías de 2006."* En dicho caso al alimentante se le adjudicaron mediante herencia bienes y dinero en efectivo.

Sin embargo, aunque no constituye ingreso propiamente, el máximo foro resolvió que para determinar el ingreso bruto de un alimentante, a los bienes adquiridos mediante herencia se les imputará un ingreso independiente de si lo producen en realidad *Fonseca* id a la pág. 34. Dicha operación se le delega al juez en el ejercicio de la sana discreción y a la luz de la totalidad de las circunstancias.

Por su parte, y esta vez en el Inciso 18 de su Artículo 2, *ante*, la Ley define lo que se considerará como "**ingreso neto**", para propósitos de la fijación de una pensión alimentaria, como*:*

> *Ingreso neto: Aquellos ingresos disponibles al alimentante, luego de las deducciones por concepto de contribuciones sobre ingreso, seguro social y otras requeridas mandatoriamente por ley. Se tomarán en consideración, además, a los efectos de la determinación del ingreso neto, las deducciones por concepto de planes de retiro, asociaciones, uniones y federaciones voluntarias, así como los descuentos o pagos por concepto de primas de pólizas de seguros de vida, contra accidentes o de servicios de salud cuando el/la alimentista sea beneficiario/a de éstos. La determinación final se hará según toda la prueba disponible, incluyendo estimados, estudios y proyecciones de ingresos, gastos, estilo de vida y cualquier otra prueba pertinente. (Énfasis nuestro).*

A tono con lo anterior, en la Sección 5 de las Guías se establece que "*[s]e considera [rá] ingreso neto disponible, aquella parte del ingreso bruto[,] que luego de descontársele las deducciones mandatorias y otras deducciones aceptadas, queda disponible para hacer frente al pago de las pensiones alimenticias.*" Véase,     *Zahira Linette Martínez Vázquez v. Nelson Rodríguez Laureano*, 160 D.P.R 145 (2003).

En adición, nuestro Tribunal Supremo resolvió en *Arguello López, López Peña v. Arguello García, 155 D.P.R. 62 (2001),* que en el ejercicio de la imputación de ingresos al alimentante, es de particular importancia que se ponderen los gastos en que incurre éste para mantener su estilo de vida al momento de establecer la cuantía de la pensión. "*Tales gastos constituyen un elemento decisivo con respecto a la determinación de cuál es la verdadera situación económica del alimentante. Más aun, la ponderación de tales gastos puede llevar al tribunal a decidir que algunos de ellos tienen que ceder ante la obligación prioritaria de alimentar.*" (Subrayado nuestro).

En concordancia con lo expuesto y en atención al historial de gastos evidenciado, el estilo de vida del cual disfruta actualmente y las demás circunstancias, **al SR. JUAN CARLOS BALCELL GALLARETA se le imputan $92,000 dólares de ingresos netos anuales o $7,666.66 mensuales.**

## IV. EFECTIVIDAD DE LA DETERMINACION DE PENSION ALIMENTARIA

En cuanto a la retroactividad de  la obligación de la pensión a tenor con el Artículo 19 de la Sección IV de la Ley Num. 5 de 30 de diciembre de 1986 según enmendada incluyendo la Ley Número 232 de 30 de diciembre de 2010, "Los pagos por concepto de pensiones alimentarias y de aumentos en las mismas serán efectivos desde la fecha en que se presentó la petición de alimentos en el tribunal... y la revisión de la pensión alimentaria será efectiva desde la fecha en que se presentó la petición de rebaja ante el tribunal o el Administrador, siempre y cuando su petición sea meritoria desde ese momento." No obstante, el propio texto de la ley establece que de existir causas excepcionales el Tribunal podrá disponer que la revisión de pensión no sea retroactiva.

En presente caso, dado el trámite procesar seguido, que incluye una solicitud de determinaciones de hechos adicionales de hechos, esta resolución constituye la determinación de pensión alimentaria que inició con la demanda radicada el 28 de diciembre de 2006. A tenor con el referido texto en el presente caso la pensión determinada en la presente resolución debe ser retroactiva a esa fecha. No obstante, existen causas excepcionales que requieren de un ajuste para hacer justicia a las partes en cuanto a la pensión alimentaria en concepto de gastos de educación.

Al momento de acordar la pensión provisional, los gastos escolares del menor Juan Francisco eran sustancialmente menor a los determinados al presente incluyendo, matrícula y mensualidades. De retrotraer la cantidad determinada daría una cantidad sustancialmente mayor a la incurrida. Toda vez que fueron pagadas por el Demandado al imputarse el gasto actual va a producir una deuda mayor por operación matemática. Por lo tanto, la partida de pensión alimentaria en concepto de gastos escolares se retrotraerá a la fecha que el menor Juan Francisco cambió de escuela. Esa información no surge claramente de la evidencia presentada por lo que hay que celebrar una vista evidenciaria a tales propósitos.

En cuanto a los gastos escolares de la menor Alexandra, los mismos fueron contemplados y se dispuso que el Demandante pagaría los gastos sujeto a que posteriormente se le diera un crédito por el porciento que se le atribuya a la Demandante con relación a los gastos escolares.

## V. DESACATO

El desacato civil es el mecanismo mediante el cual los tribunales obligan a que se cumpla con una orden emitida cuando la parte obligada por la misma ha hecho caso omiso de ésta. El desacato civil tiene un propósito eminentemente reparador. *Álvarez v. Arias*, 156 D.P.R. 352(2002).

Como excepción a la prohibición constitucional contra el encarcelamiento por deuda, el tribunal puede ordenar el encarcelamiento por desacato civil por incumplimiento de una pensión alimentaria. No obstante, si el obligado a pagar demuestra que el incumplimiento con el pago de la pensión se debe a una causa justificada, no procederá la imposición de esta medida extrema.

En el presente caso existe, de conformidad con lo determinado con relación a la pensión alimentaria controversia sobre la existencia de una deuda por concepto de aplicación retroactiva de la pensión, cantidad de la deuda no pagada y la justificación si alguna para no cumplir en el supuesto que haya incumplimiento. Existen numerosas alegaciones encontradas, por lo tanto es menester señalar una vista de desacato a pesar de que el Tribunal se había expresado en cuanto a que durante las vistas celebradas se estaba considerando dicho asunto. Se ordena citar a las partes a **vista de desacato el lunes 8 de agosto de 2011 a las 2:00p.m.**

## VI. HOGAR SEGURO

En el 1997, la Asamblea Legislativa recogió mediante legislación la norma establecida por el Tribunal Supremo en el caso *Cruz Cruz v. Irizarry Tirado,* **107 D.P.R. 655 (1978***)* y los principios prevalecientes en cuanto a hogar Seguro Véase, *Candelario v. Muñiz*, 171D.P.R. 530 (2007). La Ley Núm. 184 de 26 de diciembre de 1997 enmendó el Código Civil para añadir el Artículo 109-A, 31 L.P.R.A. sec. 385a, el cual en lo concerniente dispone:

> **(a)** El cónyuge a quien por razón del divorcio se le concede la custodia de los hijos del matrimonio, que sean menores de edad, que estén incapacitados mental o físicamente sean estos mayores o menores de edad o que sean dependientes por razón de estudios, hasta [los] veinticinco (25) años de edad, tendrá derecho a reclamar como hogar seguro la vivienda que constituyó el hogar del matrimonio y que pertenece a la sociedad de gananciales, mientras dure la minoría de edad, la preparación académica o la incapacidad de los hijos que quedaron bajo su custodia por razón de divorcio.
>
> La propiedad ganancial que constituye el hogar a guro no estará sujeta a división mientras dure cualesquiera de las condiciones en virtud de las cuales se concedió. Disponiéndose, que el derecho de hogar seguro podrá reclamarse desde que se necesitare, pudiendo ser reclamado en la demanda de divorcio, durante el proceso, o luego de decretarse el mismo. **Una vez reclamado, el juzgador determinará lo que en justicia procede de acuerdo con las circunstancias particulares de cada situación (énfasis suplido).**
>
> ..."

El propósito principal de esta legislación, según se desprende de su historial legislativo fue precisamente hacerle justicia a la institución de la familia. Se persigue tratar de salvaguardar el bienestar de los hijos cuando por razón de la separación de sus padres se encuentran en una situación de inestabilidad respecto a su vivienda. Por lo tanto, las leyes referentes a hogar seguro deben ser interpretados con toda la posible liberalidad para darle efecto a su propósito.

No obstante, la jurisprudencia se ha negado a aplicar mecánicamente el lenguaje expreso del Art. 109-A. El propio texto del Art. 109-A, dispone que: *(u)na vez reclamado, el juzgador determinará lo que en justicia procede de acuerdo con las circunstancias particulares de cada situación*. De este modo el legislador le ordena al Juez tomar en cuenta las circunstancias de cada caso para determinar que debe proceder para que sea consistente con el fin último de impartir justicia.

En el caso de autos, el inmueble cuya liquidación el demandado pretende está ubicado en la Urbanización Villa Reales en Guaynabo. Las partes pagan alrededor de $1,200.00 mensuales en concepto de hipoteca y tiene un balance aproximado de $65,000.00.

El referido inmueble ha constituido la vivienda familiar habitual por un tiempo considerable. Los menores han residido en el desde tierna edad y no han conocido otro lugar. Tampoco tienen otro lugar donde residir.

Del otro lado, el deber de alimentar a sus hijos conlleva procurar y aportar para la vivienda de los hijos. La estabilidad emocional implica también dentro de la realidad

de las partes una equivalencia de las condiciones de la vivienda en proporción a los bienes de fortuna de los padres. El Demandado no está desprovisto de un techo. Actualmente reside en la Urbanización Arboles de Montehiedra en San Juan. Dicha residencia es cuanto menos de igual o mayor valor que la casa que residen sus hijos. Por lo tanto no es desmedido ni desproporcionado establecer dicho inmueble como hogar seguro.

Contrario a lo alegado por el Demandado, desde el punto de vista económico tal determinación le resulta favorable. De declarar con lugar la pretensión del Demandado y obligar a los menores mudarse a un inmueble equivalente al que reside el, conllevaría una mensualidad mayor a la establecida actualmente. Si asumimos para efecto de nuestro análisis que el inmueble tiene un valor en el mercado de $400,000 y se financia al 5% por un término de 30 años, resultaría en un pago mensual de $2,150.00 lo que es casi el doble de lo que pagan actualmente de hipoteca.

Debemos recordar que la determinación de hogar seguro no conlleva un traslado de dominio sino una limitación temporal en beneficio de la unidad familiar al prorrogarse la liquidación de ese activo. Una vez cesa las condiciones que activan la figura de hogar seguro, las partes pueden proceder con la liquidación del mismo. Por lo tanto, se declara que el inmueble de la Urbanización Villa Reales constituye el hogar seguro de los menores.

## RESOLUCIÓN

Adoptando por referencia las determinaciones de hechos y los fundamentos de derecho decretamos y resolvemos lo siguiente:

En atención al historial de gastos evidenciado, el estilo de vida del cual disfruta actualmente y las demás circunstancias, **al SR. JUAN CARLOS BALCELL GALLARETA se le imputan $92,000 dólares de ingresos netos anuales o $7,666.66 mensuales.** Los gastos suplementarios a prorratearse entre ambos padres ascienden a la cantidad de $30,290 anuales o $2,524 mensuales. El Demandante deberá pagar $21,506 anuales o $1,792.00 mensuales en concepto de pensión suplementaria. Los menores se benefician de un plan médico provisto por el Demandado.

Se ordena citar a las partes a **vista de desacato el lunes 8 de agosto de 2011 a las 2:00p.m.**

El inmueble de la Urbanización Villa Reales perteneciente en comunidad a las partes de epígrafe constituirá el hogar seguro de los menores.

De conformidad con lo resuelto en el caso *Figueroa v. Del Rosario 147 D.P.R. 121, 126-127(1998)*, se ordena notificar esta resolución como Sentencia.

REGISTRESE Y NOTIFÍQUESE.

En Bayamón, Puerto Rico, a 30 de junio de 2011.

*ANGEL M. CANDELAS RODRÍGUEZ*
*Juez Superior*