ESTADO LIBRE ASOCIADO DE PUERTO RICO
**TRIBUNAL DE PRIMERA INSTANCIA
REGIÓN JUDICIAL DE BAYAMÓN**
SALA DE FAMILIA Y MENORES

| | |
|---|---|
| **AMARILIS GONZÁLEZ GARCÍA**<br>Demandante<br><br>vs.<br><br>**JUAN CARLOS BALCELLS GALLARETA**<br>Demandado | Civil Núm.: **D DI2006-4055**<br><br>Sala 3001<br><br>Sobre:<br><br>**DIVORCIO** |

## RELACIÓN DEL CASO, DETERMINACIONES DE HECHOS Y CONCLUSIONES DE DERECHO Y RESOLUCIÓN

En la presente resolución debemos adjudicar principalmente dos controversias. Estas son a saber: 1) La cantidad de la obligación de alimento que surja en atención a la capacidad económica del demandado; 2) Si procede imponer desacato al demandado por no cumplir su obligación de proveer alimentos; 3) Reclamación de Hogar Seguro. Las anteriores controversias, se relacionan también los diversos argumentos de derecho y alegaciones de hechos de las partes según sus respectivas teorías. Para un mejor entendimiento de la presente resolución estimamos necesario incluir la siguiente:

### RELACIÓN DEL CASO

Luego de radicada la demanda de divorcio, el 25 de enero de 2007, las partes estipularon la pensión alimentaria provisional ante la Examinadora Martha C. Torres Lopez. El Sr. Juan C. Balcells Gallareta (en adelante "Demandado") se comprometió a pagar hipoteca, mantenimiento, jardinero de la residencia, servicios de agua, electricidad, teléfono, cable tv, internet, teléfono celular, colegio de los menores y almuerzos de la hija. Además, se comprometió a proveer $400.00 para compra de alimentos y $200.00 para gastos de gasolina pagadero en cheque certificado o giro directamente a la Sra. Amarilis González García (en adelante "Demandada"). El caso quedó señalado para el mes de junio.

El 14 de diciembre de 2007, las partes se divorciaron por la causal de trato cruel quedando la controversia de la pensión pendiente de resolución hasta la vista final ante la examinadora. Aún cuando la pensión alimentaria final no se había determinado, el 4 de junio de 2008, la parte demandada por conducto de nueva representación legal solicitó la rebaja de la pensión alimentaria. Cabe señalar que en el escrito no adujo cambio en los ingresos del demandado.

El 29 de enero de 2009, se celebró la vista final de pensión alimentaria ante la examinadora Denisse Vázquez Ortiz. El asunto quedó pendiente de resolución.

El 7 de julio de 2009 la parte demandante solicitó al Tribunal que la residencia habitual de los menores se declarara hogar seguro. El 28 de septiembre de 2009 la Demandante solicitó que se encontrara al demandado incurso en desacato alegando una deuda de $34,000.

El 17 de diciembre de 2009 la examinadora rindió el informe de pensión alimentaria. En el mismo recomendó que se le imputara al Demandado ingresos de $2,320.00 debido a que los gastos informados excedían los ingresos a pesar de que no reportó gastos de subsistencia personal. A la Demandante le imputó un ingreso de 3,076.00 mensuales por lo informado en las planillas. En esa misma fecha el Tribunal dictó resolución impartiendo aprobación al mencionado informe. La resolución fue notificada el 8 de enero de 2010.

Al día siguiente se celebró una vista de desacato. Ante la solicitud de inhibición de la Jueza Katherine Hoffman el caso fue asignado al que suscribe.

El 15 de enero de 2010, la parte demandante radicó una moción solicitando determinaciones adicionales de hechos. El Tribunal le cedió a la otra parte término para contestar. El 25 de enero de 2010, cuando aun no se había adjudicado la solicitud de hechos adicionales, la parte demandante radicó una moción de reconsideración objetando los ingresos imputados. Igualmente se le concedió a la otra parte término para contestar la moción.

El 20 de abril de 2010, la parte Demandada presenta nuevamente moción de desacato. Alegó incumplimiento de pago de pensión y que se le cortara el servicio de electricidad.

El Tribunal citó vista el 13 de mayo de 2010. El asunto fue re señalado para el 22 de julio de 2010. El día de la vista el Tribunal luego de que las partes expresaran su posición dejó sin efecto la resolución de 17 de diciembre de 2009 que modificaba la pensión alimentaria. En su defecto, reinstaló efectivo el 1ro de agosto de 2010, la cantidad de pensión alimentaria fijada por estipulación de las partes el 25 de enero de 2007.

En ánimo de resolver los escritos de las partes con relación a la solicitud de determinaciones de hechos adicionales y de reconsideración, luego de un examen detenido de todas las instancias del expediente incluyendo los escritos de las partes era menester concluir que las partes no habían informado todos sus ingresos y que existía grandes incongruencias entre las determinaciones del Tribunal y el estilo de vida de las partes.[1] Por lo tanto, el Tribunal pautó vista evidenciaría para dilucidar las siguientes controversias: 1) fijación de pensión alimentaria; 2) Si procede imponer desacato al demandado por no cumplir su obligación de proveer alimentos; 3) reclamación de hogar seguro.

La vista evidenciaria se celebró los días 15, 21, 27 de septiembre, 11 de octubre y 12 de noviembre de 2010. Luego de desfilada la prueba el incidente quedó sometido. Se toma conocimiento judicial de todas las instancias del expediente. Tras analizar la evidencia ante nuestra consideración y ponderada la credibilidad que le mereció el testimonio de las partes, formulamos las siguientes:

---

[1] La parte demandante recurrió al Tribunal de Apelaciones de la determinación del Tribunal de Primera Instancia mediante el recurso de certiorari. Dicha petición fue denegada.

## DETERMINACIONES DE HECHOS

1. Las partes se casaron el 28 de diciembre de 1989 en Guaynabo, Puerto Rico.

2. Durante el matrimonio procrearon dos hijos: Alexandra de 16 años y Juan Francisco de 14 años.

3. Los menores se encuentran bajo la custodia de su madre y residen en la residencia en la Urbanización Mansiones Reales en Guaynabo, Puerto Rico.

4. El referido inmueble ha constituido la vivienda familiar habitual por un tiempo considerable. Los menores han residido en el desde tierna edad y no han conocido otro lugar. Tampoco tienen otro lugar donde residir.

5. El Sr. Juan Carlos Balcells Gallareta, actualmente es Presidente de la Corporación Gusupa, Inc. También es accionista, administrador, comprador y vendedor de la empresa según varios documentos admitidos que obran en expediente. Trabaja para la compañía desde el 1987. Antes se desempeñaba como Oficial Bancario en el Chase Manhattan Bank desde el 1985 hasta el 1987.

6. Gusupa, Inc., es una corporación íntima cuyos accionistas y directores son el demandante y familiares de éste. Juan Balcells (padre) es tesorero y Leonie Gallareta Secretaria.

7. Durante el matrimonio la Demandante no trabajaba para cuidar a los menores. Todo el dinero que se obtenía y se usaba en el hogar para sufragar los gastos familiares provenían del negocio Gusupa, Inc. Conforme a la prueba presentada el Tribunal estima que al año 2006, los ingresos familiares ascendían a una cantidad mayor a los $7,600.00 mensuales.

8. Sr. Juan Carlos Balcells Gallareta, posee cinco tarjetas de crédito pagadas por la Corporación Gusupa, Inc. Conforme al testimonio, el firma solo en todas, excepto en una, en la que también firma su padre quien es tesorero.

9. Conforme a lo testificado por Amarilis González García, era usual que el Demandado pagara muchos de los gastos con recursos provenientes de la compañía utilizando las tarjetas de crédito de la compañía. Durante la vista se demostró que pagaba gastos personales y de los menores con las tarjetas de crédito.

10. En las planillas de 2004, 2005 y 2006 reclamó deducción en concepto de gastos de vehículo de motor. Durante su testimonio el demandado testificó que esos gastos los pagaba la corporación.

11. El 25 de enero de 2007, el Demandado se comprometió ante la examinadora de pensiones alimentarias a pagar hipoteca, mantenimiento, jardinero de la residencia, servicios de agua, electricidad, teléfono cable tv, internet, teléfono celular, colegio de los menores y almuerzos de la hija y proveer $400.00 para compra de alimentos y $200.00 para gastos de gasolina. El total de los gastos estipulados ascendían a más de $4,000.00 mensuales y eran menores a los incurridos por el núcleo familiar mientras las partes estaban casadas.

12. El Demandado proveyó los gastos ininterrumpidamente todos los meses hasta el mes de junio de 2008 que comenzaron los pagos irregulares por controversia con los gastos escolares.

13. Dichas cantidades no contemplan gastos de subsistencia personal del demandado, ni otras partidas sobre las cuales se presentó evidencia tales como gastos de mantenimiento y cuidado de la embarcación "Souvenir", los cuales se evidenció que algunos fueron pagados con tarjetas de la compañía.

14. A partir del año 2009 dos eventos produjeron un cambio sustancial en las circunstancias económicas del Demandado. En primer lugar, el hijo menor cambió de escuela. En segundo lugar, el Demandado contrajo nuevas nupcias el 15 de mayo de 2009 bajo el régimen de separación de bienes.

15. El Demandado alega que para poder pagar la pensión provisional tuvo que tomar dinero prestado y utilizar el valor acumulado de un seguro de vida. Quiso implicar de no se le puede imputar dichas cantidades como ingreso. Varias razones nos llevan a pensar en contrario.

16. De acuerdo a las planillas de contribución sobre ingresos de individuos para los años 2004, 2005, 2006 y 2009 que obran en el expediente, el SR. JUAN CARLOS BALCELLS GALLARETA reportó ingresos provenientes de sueldo $11,118, $10,712, $10,912, $10,912 e ingresos por concepto de comisiones ascendente a $5,988, $9,820, $14,554 y $12,767 respectivamente.

17. El SR. JUAN CARLOS BALCELLS GALLARETA informó en la Planilla de Información y Económica presentada el 30 de junio de 2008 la suma de $2,199.00 de ingresos netos mensuales. Sin embargo, los gastos informados ascienden a $2,320.00 y no incluyó partida por concepto de alimentos, gastos médicos y de servicios esenciales.

18. El SR. JUAN CARLOS BALCELLS GALLARETA informó en la Planilla de Información y Económica presentada el 3 de septiembre de 2010 la suma de $1,896.00 de ingresos netos mensuales. Sin embargo, los gastos informados ascienden a $545.00 y no incluyó partida por concepto de alimentos, gastos médicos y de servicios esenciales.

19. En la Planilla de Información y Económica presentada el 30 de junio de 2008 el SR. JUAN CARLOS BALCELLS GALLARETA informó deudas ascendentes a $134,670 y pagos mensuales de $3,229.00. Las deudas correspondían a tres tarjetas de crédito, una deuda hipotecaria y una deuda personal de un préstamo.

20. El SR. JUAN CARLOS BALCELLS GALLARETA en la Planilla de Información y Económica presentada el 3 de septiembre de 2010 informó deudas ascendentes a $153,621 y pagos mensuales de $2,190.00. Las deudas informadas corresponden a dos tarjetas de crédito, pago hipotecario del inmueble de Villa Reales, cuatro préstamos personales, una reserva de cuenta de cheques y una deuda con Departamento de Rentas Internas de los Estados Unidos.

21. En resumen, según la información provista por el Demandado en las Planillas de Información personal y Económica del 30 de junio de 2008 al 3 de

septiembre de 2010 sus ingresos se redujeron alrededor de $303.00 mensuales. De otro lado, las deudas en el mismo periodo aumentaron solamente $18,951.00.

22. Es menester observar que durante esos dos años pagó sobre $4,000.00 mensuales de pensión alimentaria provisional sin contar gastos personales de él ni del nuevo núcleo familiar durante 26 meses.

23. Un cálculo conservador de $4,000.00 mensuales multiplicado por 26 meses asciende a $104,000.00. Informó aproximadamente en promedio $2,000 por 26 meses es igual a $52,000. Asumiendo para propósitos del análisis que utilizó los 16,000 del seguro de vida. De dónde salen los otros $36,000.00?

24. La prueba presentada demostró que durante el matrimonio con la Demandante el sufragaba con su peculio casi la totalidad de los gastos familiares ascendentes a $7,600.00. Las cantidades pagadas eran superiores a la cantidad pactada como pensión alimentaria provisional.

25. Por lo tanto, es menester concluir que el Demandado no reportó en la planilla de información personal y económica todos los ingresos provenientes de su relación con Gusupa, Inc., no reportó todas las fuentes de ingreso o una combinación de ambas posibilidades.

26. En atención al historial de gastos evidenciado, el estilo de vida del cual disfruta actualmente y las demás circunstancias, **al SR. JUAN CARLOS BALCELL GALLARETA se le imputan $92,000 dólares de ingresos netos anuales o $7,666.66 mensuales.**

27. La SRA. AMARILIS GONZÁLEZ GARCÍA trabaja actualmente como abogada y devenga un ingreso neto mensual ascendente a $3,076.00 mensuales.

28. La SRA. AMARILIS GONZÁLEZ GARCÍA, es parte de la sucesión de DON FRANCISCO GONZÁLEZ VÉLEZ con sus hermanos.

29. Según copia certificada de la Planilla de Caudal Relicto la sucesión consta de varias propiedades que totalizan $1,669,444.00 más $6,861.32 depósitos y un vehículo de motor de $20,000.00. De ese total, $848,152.66 corresponde al valor de los bienes del causante.

30. No se presentó evidencia que todo o parte de los bienes le hayan sido adjudicados a ésta. Según su testimonio, ella solo posee una cuota indivisa que está en trámites de partición. La Demandante no devenga ingresos frutos ni rentas de su participación en los bienes de la sucesión. Por lo tanto, al presente no se le puede imputar un ingreso de esos bienes.

31. La residencia donde habita tiene un gravamen hipotecario con una mensualidad de $1,141.00. El balance aproximado de la deuda es de $60,000.

32. La residencia es habitada por tres personas incluyendo los dos menores. Se imputa un gasto mensual de $760.00 o $9,128 anual en concepto de vivienda para beneficio de los menores a ser asignado proporcionalmente a las partes.

33. El menor Juan Francisco estudia en el Colegio San Ignacio desde el mes de agosto de 2009, cuya matrícula y otros cargos ascienden a $10,150.00 anuales. Las mensualidades son pagaderas en un plazo y ascienden a $8,550.00.

34. En la vista de 16 de marzo de 2009, acordaron que la Demandante pagaría el pago inicial del colegio al cual asistiría el hijo y luego el padre reembolsaría a ésta el porciento determinado con relación las partidas suplementarias.

35. La menor Alexandra estudia en la Academia María Reina cuya matrícula asciende a $1,112.00 y $7,500.00 al año de anualidad para un total de $8,612.00

36. Al presente existe una deuda con el Colegio de $7,500.00 más recargos correspondientes al año académico 2010-2011. Conforme al acuerdo de las partes el Demandado se comprometió a sufragar la totalidad de los gastos escolares de la hija. Se aplicaría el mismo principio de proporcionalidad un vez se establezca el porciento de responsabilidad por los gastos suplementarios.

37. Según la evidencia presentada los menores incurren en $ 2,400.00 anuales equivalente a $200.00 mensuales en concepto de uniformes, libros y otros materiales escolares.

38. El total de gastos escolares asciende a $21,162.00 anuales o $1,763.50 mensuales.

39. El porciento de participación en las partidas suplementarias de la Demandante es 29% y del Demandado es 71%.

40. Los gastos suplementarios a prorratearse entre ambos padres ascienden a la cantidad de $30,290 anuales o $2,524 mensuales. El Demandante deberá pagar $21,506 anuales o $1,792.00 mensuales en concepto de pensión suplementaria.

41. Los menores se benefician de un plan médico provisto por el Demandado.

42. Conforme a las *Nuevas Guías para Determinar y Modificar las Pensiones Alimentarias en Puerto Rico*, Reglamento Núm. 7135 del 24 de abril de 2006, al Sr. Juan Carlos Balcells Gallareta le corresponde pagar la cantidad de $3,046.00 mensuales de pensión alimentaria básica y $1,792.00 (71%) mensuales de pensión alimentaria suplementaria.

43. La pensión total asciende a $4,838.00 mensuales. El señor JUAN CARLOS BALCELLS GALLARETA pagará dicha cantidad de forma mensual, mediante pago directo utilizando giro o cheque de gerente retroactivo a la fecha de la petición.

44. El Tribunal en atención a la complejidad del caso y las recurrentes intervenciones de la representación legal de la demandante concede $4,200.00 en honorario de abogados a ser pagados en 90 días.

En atención a las anteriores Determinaciones de Hechos, formulamos las siguientes:

## CONCLUSIONES DE DERECHO

### I. Obligación de Alimentar

Se define el término de alimentos como *"todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia, incluyendo la educación del alimentista, cuando es menor de edad."* 31 L.P.R.A. sec. 561.

En Puerto Rico el deber de proveer alimentos o asistencia económica a los hijos, emana de nuestro Código Civil, 31 L.P.R.A. sec. 561-601; de la Ley Especial

para el Sustento de Menores, Ley Núm. 5 del 30 de diciembre de 1986, según enmendada, 8 L.P.R.A. sec. 501 et seq., y de las Guías Mandatorias para Fijar y Modificar Pensiones Alimentarias en Puerto Rico. Dicha obligación, según ha expresado nuestro Tribunal Supremo en el caso de *Chévere Mouriño v. Levis Goldstein*, 152 D.P.R. 492, 499 (2000), surge como resultado de ser padre o madre, y existe con todos los efectos patrimoniales, jurídicos y morales desde el momento en que nace el hijo, irrespectivamente de las circunstancias de su nacimiento, de que se tenga o no la patria potestad o de que los padres vivan o no en compañía del menor. Por ello, es responsabilidad y deber de ambos progenitores aportar a la manutención de los hijos de acuerdo a sus respectivos caudales.

El Art. 4 de la Ley Orgánica de la Administración para el Sustento de Menores, Ley Núm. 5 del 30 de diciembre de 1986, según enmendada, 8 L.P.R.A. sec. 503, dispone:

> *"Los padres e hijos, los cónyuges, los ex-cónyuges y los parientes están obligados recíprocamente a ayudarse y sostenerse económicamente, según dispuesto en el Código Civil y en la jurisprudencia interpretativa. Los padres de un menor son responsables de su manutención y el tribunal o el Administrador podrá ordenarle pagar una suma justa y razonable por concepto de pensión alimentaria a tenor con la secc. 518 de este título."*

El Art. 19 de la Ley Orgánica de la Administración para el Sustento de Menores, supra, 8 L.P.R.A., secc. 518, dispone:

> *"En todo caso en que se solicita la fijación o modificación, o que se logre un acuerdo o estipulación de una pensión alimentaria, será mandatorio que el tribunal o el Administrador, según sea el caso, determine el monto de la misma utilizando para ello las guías adoptadas a tenor con lo dispuesto en esta sección."*

> *"El Administrador o el tribunal, a solicitud de parte o a su discreción, podrá iniciar el procedimiento para modificar una orden de pensión alimentaria en cualquier momento y fuera del ciclo de tres (3) años, cuando entienda que existe justa causa para así hacerlo, tal como variaciones o cambios significativos o imprevistos en los ingresos, capacidad de generar ingresos, egresos, gastos o capital del alimentante o alimentista, o en los gastos, necesidades o circunstancias del menor, o cuando exista cualquier otra evidencia de cambio sustancial en circunstancias."*

## II. Pensión básica y pensión suplementaria

El Artículo 4(27) de las Nuevas Guías para Determinar y Modificar las Pensiones Alimentarias en Puerto Rico, Reglamento Núm. 7135, del 24 de abril de 2006, define el término de **pensión** básica como *"la participación del ingreso neto de la persona no custodia dedicada al pago de gastos mínimos necesarios para la crianza del alimentista que incluyen gastos por concepto de transportación, entretenimiento y vestimenta excepto gastos de uniforme."*

El Artículo 4(30), supra, define **pensión suplementaria** como *"la porción del ingreso neto que la persona no custodia debe destinar para pagar la parte que le corresponde por concepto de gastos suplementarios."*

Así, pues, el propio Reglamento en su Artículo 4(14), supra, define **gastos**

suplementarios como:

> "Los gastos que tanto la persona custodia como la no custodia deben sufragar para satisfacer las necesidades del alimentista, no contemplados en la pensión alimentaria básica y en la pensión básica ajustada. Éstos incluyen gastos de educación, vivienda, y gastos de salud no cubiertos por un plan de seguro médico. También incluye los gastos por concepto de cuido de niños/as, cuando la persona custodia se vea obligada a incurrir en los mismos para poder estudiar o ejercer una profesión u oficio. Al momento de determinar los gastos suplementarios, el juzgador deberá considerar no sólo los gastos que efectivamente se pagaron, sino también aquellos que deberían sufragarse para satisfacer todas las necesidades del alimentista."

En síntesis, la pensión suplementaria se establece tomando en consideración la responsabilidad que la persona custodia y la no custodia tiene en relación a los gastos suplementarios de los alimentistas.

III. Ingreso

El Artículo 4 (15) del Reglamento 7135 *Guías para Determinar y Modificar las Pensiones Alimentarias en Puerto Rico (Guías)* reza:

> 15. **Ingresos:** Comprenden cualquier ganancia, **beneficio**, rendimiento o fruto derivado de sueldos, jornales o compensación por servicios personales, incluyendo la retribución recibida por servicios prestados como funcionario o empleado del Estado Libre Asociado de Puerto Rico, del Gobierno de los Estados Unidos de América, el Distrito de Columbia, las Islas Vírgenes de los Estados Unidos de América, o cualquier territorio o posesión sujeta a la jurisdicción de los Estados Unidos de América según lo permitan las leyes y reglamentos federales aplicables, de cualquier estado de la Unión de los Estados Unidos de América, o de cualquier agencia o instrumentalidad de cualesquiera de las mencionadas entidades en cualquiera que sea la forma en que se pagaren; o de profesiones, oficios, industrias, negocios, comercio o ventas; o de operaciones en propiedad, bien sea mueble o inmueble, que surjan de la posesión o uso del interés en tal propiedad; también los derivados de intereses, rentas, dividendos, beneficios de sociedad, valores o la operación de cualquier negocio explotado con fines de lucro o utilidad; y ganancias, beneficios, rendimientos, fondos, emolumentos o compensación derivados de cualquier procedencia, incluyendo compensaciones como contratista independiente, compensaciones por desempleo, compensaciones por incapacidad, beneficios de retiro y pensiones o cualquier otro pago que reciba un alimentante de cualquier persona natural o jurídica. (Énfasis nuestro).

En el contexto de padre alimentante el Tribunal Supremo en el caso ***Fonseca v. Rodríguez***, 2011 TSPR 4 (2011) sobre el concepto ingreso dispuso que *"los bienes adquiridos mediante herencia no constituyen ingreso para efectos del cómputo de una pensión alimentaria al amparo de la Ley 5 de 1986 según enmendadas, y las Guías de 2006."* En dicho caso al alimentante se le adjudicaron mediante herencia bienes y dinero en efectivo.

Sin embargo, aunque no constituye ingreso propiamente, el máximo foro resolvió que para determinar el ingreso bruto de un alimentante, a los bienes adquiridos mediante herencia se les imputará un ingreso independiente de si lo producen en realidad *Fonseca* id a la pág. 34. Dicha operación se le delega al juez en el ejercicio de la sana discreción y a la luz de la totalidad de las circunstancias.

Por su parte, y esta vez en el Inciso 18 de su Artículo 2, *ante*, la Ley define lo que se considerará como "**ingreso neto**", para propósitos de la fijación de una pensión alimentaria, como:

> ***Ingreso neto:*** *Aquellos ingresos disponibles al alimentante, luego de las deducciones por concepto de contribuciones sobre ingreso, seguro social y otras requeridas mandatoriamente por ley. Se tomarán en consideración, además, a los efectos de la determinación del ingreso neto, las deducciones por concepto de planes de retiro, asociaciones, uniones y federaciones voluntarias, así como los descuentos o pagos por concepto de primas de pólizas de seguros de vida, contra accidentes o de servicios de salud cuando el/la alimentista sea beneficiario/a de éstos. La determinación final se hará según toda la prueba disponible, incluyendo estimados, estudios y proyecciones de ingresos, gastos, estilo de vida y cualquier otra prueba pertinente. (Énfasis nuestro).*

A tono con lo anterior, en la Sección 5 de las Guías se establece que *"[s]e considera [rá] ingreso neto disponible, aquella parte del ingreso bruto[,] que luego de descontársele las deducciones mandatorias y* **otras deducciones aceptadas***, queda disponible para hacer frente al pago de las pensiones alimenticias."* Véase, Zahira Linette Martínez Vázquez v. Nelson Rodríguez Laureano, 160 D.P.R 145 (2003).

En adición, nuestro Tribunal Supremo resolvió en **Arguello López, López Peña v. Arguello García, 155 D.P.R. 62 (2001)**, que en el ejercicio de la imputación de ingresos al alimentante, es de particular importancia que se ponderen los gastos en que incurre éste para mantener su estilo de vida al momento de establecer la cuantía de la pensión. *"Tales gastos constituyen un elemento decisivo con respecto a la determinación de cuál es la verdadera situación económica del alimentante. Más aun, la ponderación de tales gastos puede llevar al tribunal a decidir que algunos de ellos tienen que ceder ante la obligación prioritaria de alimentar."* (Subrayado nuestro).

En concordancia con lo expuesto y en atención al historial de gastos evidenciado, el estilo de vida del cual disfruta actualmente y las demás circunstancias, **al SR. JUAN CARLOS BALCELL GALLARETA se le imputan $92,000 dólares de ingresos netos anuales o $7,666.66 mensuales.**

## IV. EFECTIVIDAD DE LA DETERMINACION DE PENSION ALIMENTARIA

En cuanto a la retroactividad de la obligación de la pensión a tenor con el Artículo 19 de la Sección IV de la Ley Num. 5 de 30 de diciembre de 1986 según enmendada incluyendo la Ley Número 232 de 30 de diciembre de 2010, "Los pagos por concepto de pensiones alimentarias y de aumentos en las mismas serán efectivos desde la fecha en que se presentó la petición de alimentos en el tribunal... y la revisión de la pensión alimentaria será efectiva desde la fecha en que se presentó la petición de rebaja ante el tribunal o el Administrador, siempre y cuando su petición sea meritoria desde ese momento." No obstante, el propio texto de la ley establece que de existir causas excepcionales el Tribunal podrá disponer que la revisión de pensión no sea retroactiva.

En presente caso, dado el trámite procesar seguido, que incluye una solicitud de determinaciones de hechos adicionales de hechos, esta resolución constituye la determinación de pensión alimentaria que inició con la demanda radicada el 28 de diciembre de 2006. A tenor con el referido texto en el presente caso la pensión determinada en la presente resolución debe ser retroactiva a esa fecha. No obstante, existen causas excepcionales que requieren de un ajuste para hacer justicia a las partes en cuanto a la pensión alimentaria en concepto de gastos de educación.

Al momento de acordar la pensión provisional, los gastos escolares del menor Juan Francisco eran sustancialmente menor a los determinados al presente incluyendo, matrícula y mensualidades. De retrotraer la cantidad determinada daría una cantidad sustancialmente mayor a la incurrida. Toda vez que fueron pagadas por el Demandado al imputarse el gasto actual va a producir una deuda mayor por operación matemática. Por lo tanto, la partida de pensión alimentaria en concepto de gastos escolares se retrotraerá a la fecha que el menor Juan Francisco cambió de escuela. Esa información no surge claramente de la evidencia presentada por lo que hay que celebrar una vista evidenciaría a tales propósitos.

En cuanto a los gastos escolares de la menor Alexandra, los mismos fueron contemplados y se dispuso que el Demandante pagaría los gastos sujeto a que posteriormente se le diera un crédito por el porciento que se le atribuya a la Demandante con relación a los gastos escolares.

## V. DESACATO

El desacato civil es el mecanismo mediante el cual los tribunales obligan a que se cumpla con una orden emitida cuando la parte obligada por la misma ha hecho caso omiso de ésta. El desacato civil tiene un propósito eminentemente reparador. *Alvarez v. Arias*, 156 D.P.R. 352(2002).

Como excepción a la prohibición constitucional contra el encarcelamiento por deuda, el tribunal puede ordenar el encarcelamiento por desacato civil por incumplimiento de una pensión alimentaria. No obstante, si el obligado a pagar demuestra que el incumplimiento con el pago de la pensión se debe a una causa justificada, no procederá la imposición de esta medida extrema.

En el presente caso existe, de conformidad con lo determinado con relación a la pensión alimentaria controversia sobre la existencia de una deuda por concepto de aplicación retroactiva de la pensión, cantidad de la deuda no pagada y la justificación si alguna para no cumplir en el supuesto que haya incumplimiento. Existen numerosas alegaciones encontradas, por lo tanto es menester señalar una vista de desacato a pesar de que el Tribunal se había expresado en cuanto a que durante las vistas celebradas se estaba considerando dicho asunto. Se ordena citar a las partes a **vista de desacato el lunes 8 de agosto de 2011 a las 2:00p.m.**

## VI. HOGAR SEGURO

En el 1997, la Asamblea Legislativa recogió mediante legislación la norma establecida por el Tribunal Supremo en el caso *Cruz Cruz v. Irizarry Tirado*, 107 D.P.R. 655 (1978) y los principios prevalecientes en cuanto a hogar Seguro Véase, *Candelario v. Muñiz*, 171 D.P.R. 530 (2007). La Ley Núm. 184 de 26 de diciembre de 1997 enmendó el Código Civil para añadir el Artículo 109-A, 31 L.P.R.A. sec. 385a, el cual en lo concerniente dispone:

> (a) El cónyuge a quien por razón del divorcio se le concede la custodia de los hijos del matrimonio, que sean menores de edad, que estén incapacitados mental o físicamente sean estos mayores o menores de edad o que sean dependientes por razón de estudios, hasta [los] veinticinco (25) años de edad, tendrá derecho a reclamar como hogar seguro la vivienda que constituyó el hogar del matrimonio y que pertenece a la sociedad de gananciales, mientras dure la minoría de edad, la preparación académica o la incapacidad de los hijos que quedaron bajo su custodia por razón de divorcio.
>
> La propiedad ganancial que constituye el hogar seguro no estará sujeta a división mientras dure cualesquiera de las condiciones en virtud de las cuales se concedió. Disponiéndose, que el derecho de hogar seguro podrá reclamarse desde que se necesitare, pudiendo ser reclamado en la demanda de divorcio, durante el proceso, o luego de decretarse el mismo. **Una vez reclamado, el juzgador determinará lo que en justicia procede de acuerdo con las circunstancias particulares de cada situación (énfasis suplido).**
>
> ..."

El propósito principal de esta legislación, según se desprende de su historial legislativo fue precisamente hacerle justicia a la institución de la familia. Se persigue tratar de salvaguardar el bienestar de los hijos cuando por razón de la separación de sus padres se encuentran en una situación de inestabilidad respecto a su vivienda. Por lo tanto, las leyes referentes a hogar seguro deben ser interpretados con toda la posible liberalidad para darle efecto a su propósito.

No obstante, la jurisprudencia se ha negado a aplicar mecánicamente el lenguaje expreso del Art. 109-A. El propio texto del Art. 109-A, dispone que: *(u)na vez reclamado, el juzgador determinará lo que en justicia procede de acuerdo con las circunstancias particulares de cada situación*. De este modo el legislador le ordena al Juez tomar en cuenta las circunstancias de cada caso para determinar que debe proceder para que sea consistente con el fin último de impartir justicia.

En el caso de autos, el inmueble cuya liquidación el demandado pretende está ubicado en la Urbanización Villa Reales en Guaynabo. Las partes pagan alrededor de $1,200.00 mensuales en concepto de hipoteca y tiene un balance aproximado de $65,000.00.

El referido inmueble ha constituido la vivienda familiar habitual por un tiempo considerable. Los menores han residido en el desde tierna edad y no han conocido otro lugar. Tampoco tienen otro lugar donde residir.

Del otro lado, el deber de alimentar a sus hijos conlleva procurar y aportar para la vivienda de los hijos. La estabilidad emocional implica también dentro de la realidad

de las partes una equivalencia de las condiciones de la vivienda en proporción a los bienes de fortuna de los padres. El Demandado no está desprovisto de un techo. Actualmente reside en la Urbanización Arboles de Montehiedra en San Juan. Dicha residencia es cuanto menos de igual o mayor valor que la casa que residen sus hijos. Por lo tanto no es desmedido ni desproporcionado establecer dicho inmueble como hogar seguro.

Contrario a lo alegado por el Demandado, desde el punto de vista económico tal determinación le resulta favorable. De declarar con lugar la pretensión del Demandado y obligar a los menores mudarse a un inmueble equivalente al que reside el, conllevaría una mensualidad mayor a la establecida actualmente. Si asumimos para efecto de nuestro análisis que el inmueble tiene un valor en el mercado de $400,000 y se financia al 5% por un término de 30 años, resultaría en un pago mensual de $2,150.00 lo que es casi el doble de lo que pagan actualmente de hipoteca.

Debemos recordar que la determinación de hogar seguro no conlleva un traslado de dominio sino una limitación temporal en beneficio de la unidad familiar al prorrogarse la liquidación de ese activo. Una vez cesa las condiciones que activan la figura de hogar seguro, las partes pueden proceder con la liquidación del mismo. Por lo tanto, se declara que el inmueble de la Urbanización Villa Reales constituye el hogar seguro de los menores.

## RESOLUCIÓN

Adoptando por referencia las determinaciones de hechos y los fundamentos de derecho decretamos y resolvemos lo siguiente:

En atención al historial de gastos evidenciado, el estilo de vida del cual disfruta actualmente y las demás circunstancias, **al SR. JUAN CARLOS BALCELL GALLARETA se le imputan $92,000 dólares de ingresos netos anuales o $7,666.66 mensuales.** Los gastos suplementarios a prorratearse entre ambos padres ascienden a la cantidad de $30,290 anuales o $2,524 mensuales. El Demandante deberá pagar $21,506 anuales o $1,792.00 mensuales en concepto de pensión suplementaria. Los menores se benefician de un plan médico provisto por el Demandado.

Se ordena citar a las partes a **vista de desacato el lunes 8 de agosto de 2011 a las 2:00p.m.**

El inmueble de la Urbanización Villa Reales perteneciente en comunidad a las partes de epígrafe constituirá el hogar seguro de los menores.

De conformidad con lo resuelto en el caso *Figueroa v. Del Rosario 147 D.P.R. 121, 126-127(1998)*, se ordena notificar esta resolución como Sentencia.

**REGÍSTRESE Y NOTIFÍQUESE.**

En Bayamón, Puerto Rico, a 30 de junio de 2011.

*ÁNGEL M. CANDELAS RODRÍGUEZ*
*Juez Superior*