IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

RECEIVED AND FILED - SJ-PR

USBC '23 MAR 23 PM2:45

| | |
|---|---|
| IN RE: | CASE NO. 11-06637 MCF |
| JUAN CARLOS BALCELLS GALLARRETA | |
| Debtor | Chapter 7 |
| BANCO POPULAR PUERTO RICO – Mortgage Division | |
| Movant | |
| JUAN CARLOS BALCELLS GALLARRETA and Chapter 7 Trustee, NOREEN WISCOWITCH RENTAS, TRUSTEE | 11USC 362 (d) (1) |
| | Relief from Automatic Stay |
| Respondents | |

INFORMATIVE MOTION,
OPPOSITION TO LIFT OF AUTOMATIC STAY AND OTHER MATTERS RELATED

TO THE HONORABLE COURT:

COMES NOW, Creditor & co-owner AMARILIS GONZALEZ GARCIA, *Pro Se*, in her capacity as co-owner of post marital community property and for the child support debt claimed, respectfully states and requests:

Co-owner clarify issues related to bankruptcy proceedings, opposition to Lift of Automatic Stay and inform most recent Request of Remedies presented on February 8, 2021, in case 14-00137:

I.      Opposition To Banco Popular Lift of Automatic Stay

1.   On March 8th, 2023, Banco Popular presented Motion for Relief From Stay based on 11 USC section 362 (d)(1).

2.   The Rule LBR 4001-1(d)(3) of the Federal Rules of Bankruptcy Procedure states "*All documents filed pursuant to this LBR must be served on the following parties: (6) all parties with liens of record, or any other party known to the movant claiming an interest in the property..*". The movant of the Relief of Stay did not include in his certificate the service to co-owner interest in the property and the party claiming priority for the child support debt claimed since 2012 that has a lien for the debt as per State Law.

3.   The section 362(d) requires that movant proves cause and lack of adequate protection. In the motion presented, Banco Popular did not explained how his interest is affected. The movant did not comply with the requirements of the section 362(d) for granting the relief of stay requested.

4. The adequate protection is a protection from the delay in the realization of the value of the collateral. The protection could be traduced to "lost opportunity costs" that represents the interest that can be received for the money. Banco Popular has adequate protection.

5. The payment for such amount of interests and penalties could be imposed to the debtor or Trustee for the total interest payments equal to the amount of interest lost. Such interest and present and future penalties should be imposed to the debtor and Trustee for provoking the continuance of the proceedings to maintain a simulated bankruptcy and the bank can also assume the amounts of interest and penalties for contributing in the simulated bankruptcy.

6. Banco Popular is requesting a total of $64,740.48 which represents the double of the principal balance of $29,812.65 at the commencement of the Adversary Proceedings on May 2014.

7. In the Banco Popular motion, the bank incorrectly states that no payments have been made since the filing of the bankruptcy petition in 2011. Since the filing of the bankruptcy petition, I have paid $39,000. After bankruptcy petition, I continued paying the monthly mortgage and the bank was returning the payments, then, after insisting of my right to the property, Trustee agreed to adjudicate the house to me and I was allowed to pay the accrued balance and, after paying the accrued balance, I continued making monthly payments for a total of $39,000. Exhibit 1. Banco Popular returned mortgage payments, pgs. 1-2. I continued making the payments until Trustee filed the Adversary Proceeding to obtain authorization from the Court to sell the residential property to another person without my consent.

8. Trustee filed the Adversary Proceedings, after Trustee received the evidence of Audited Financial Statements, loan documents under oath of debtor JCBG (Balcells Jr.), other documents disclosing the matrimony between debtor and me as sole owners of the corporation, CPA forensic report and having Appellate Court Mandate & judgments for the pending matters related to distribution of post marital community property.

II. Re-Statement of My Request for Remedies Presented to the Court

9. On February 8, 2021, I filed an Informative Motion and Request for Remedies[1] in case 14-00137, In summary, I requested the payment of the child support debt claimed, adjudication of the residential property to me, additional discovery to recover conceal assets and to identify sources for the collection of unpaid balances, distribution of the post marital community property to properly compose the bankruptcy estate with debtor participation. I requested the following;

      a. Order the payment of the child support debt and the mandatory legal interest applicable for the child support debts, as per cited State Law;
      b. Adjudicate the subject property at Villas Reales to Defendant by obtaining as payment the participation of debtor from a portion of the child support owed;
      c. Allow discovery of the debtor and debtor spouse to identify sources for the collection of the remaining unpaid balance.

---

[1] Motion titled "Informative Motion and Request for Remedies" dates February 8, 2021 on adversary proceedings case 14-00137.

    d. To include the assets or the value of the assets that the debtor disposed to defraud the post marital community and recover them for distribution, according to case Quetglas Carazo.

    e. To conduct the necessary discovery to identify the assets, for the liquidation and distribution of the post marital community property.

    f. To conduct discovery to investigate the corporation and the directors or individuals controlling the corporation for the recovery of the omitted assets and property necessary to compose the estate and participations.

10. Since the beginning of the bankruptcy proceedings, I informed that debtor filed bankruptcy to evade child support responsibility and to evade distribution of post marital community property. I have stated that I married debtor on December 28, 1989; on December 28, 2006, the divorce petition was filed and on December 2007, the divorce decree was issued. The day after the divorce decree was issued Juan C. Balcells introduced to the children his new partner, Cristina Santaella, after that date he commenced to accrue child support debt. The post marital community property division has been requested since 2008. On May 2009, debtor married current spouse Cristina Santaella. On 2010, the Appellate Court ordered a Mandate for the consideration of the corporation for the distribution of the post marital community property, that was pending to be solved due to the paralization of the case and the bankruptcy proceedings, & after paralization, for procedural economy, I requested the distribution at the bankruptcy court. On June 30, 2011, the State Court issued a Judgment ordering a final child support payment for two minors based on the debtor's informed expenses because he did not want to disclose his earnings, the State Court imputed monthly income of $7,000.00. A month after the determination, on August 2011, debtor filed bankruptcy petition case #11-06637. On December 21, 2011, the P.R. Appellate Court confirmed State Court Child Support determinations and the designation of homestead for the 2 minors.

11. The correct composition of the estates is fundamental for the distributions and to determine participation of debtor in the assets. Debtor property interest depend on state law.

III. Debtor Bankruptcy Petition False Representations

12. Debtor failed to disclose his true income, the State Court determined that debtor was concealing assets, since he spends much more than what he supposedly informed as income. Debtor failed to disclose in the bankruptcy petition that the *Sociedad de Gananciales* owns the shares from the Gusupa Corporation. Debtor failed to include the shares of the corporation Gusupa but included multiple non consumer debts that correspond to Gusupa corporation including a substantial credit line commercial debt of $250,000. Gusupa owned several commercial properties that had significant equity that were not needed to continue business operations[2], his participation on those properties can be used to pay corporation debts, instead, Trustee is obsessed in selling the residential house to pay corporation debts; knowing that before bankruptcy filing, State Court declared the property homestead in benefit of 2 minors.

---

[2] Such properties are located at Ave. De Diego #602 & #604 and appear as of today in the Property Registry with no debts.

13. Debtor also purposely omitted from the bankruptcy petition the current spouse income, since before and during the time of the bankruptcy petition, Cristina Santaella has been employed by her retired parents corporation Harbor Bunkering. Cristina Santaella's father, Alfredo Santaella Latimer, passed away in 2021 and the corporation was valued in $11,806,174.00, taking in account the scale of the corporation we can infer that Cristina Santaella's income was enough to make the debtor ineligible for a chapter 7 bankruptcy. Exhibit 2. Alfredo Santaella Inheritance Release, pgs. 3-5.

14. Debtor also stated the domestic child support debt for an amount much lower than what debtor knew he already owed, debtor informed in the petition the debt included in the last official State Court document but knew he had missed many more payments and still decided to omit this information.

15. Trustee knew that debtor's income was misstated for omitting participation in Gusupa corporation, and Trustee also knew that the reported income of debtor from Structural Steel Works came from an insider, the spouse brother-in-law. Debtor stated the lower income needed to file a chapter 7 bankruptcy while having a managerial position in the company Structural Steel Works, in which he supervised the work of the engineers in the company. He also made representations to the children that he was the employee from the company in charge of managing and supervising the construction project for the Mall of San Juan.

16. Among the Trustees duty is to investigate the debtor financial affair, but Trustee unattended her obligation. Trustee published defamation[3] documents (not confirmed by the Supreme Court) from the confidential child support case, when her duty was to investigate debtor financial affairs to include correct debtor income, assets, participation in the assets and not propose schemes contrary to bankruptcy law and case management.

17. On August 2015, Banco Popular provided a certification listing several debts including debtor debts that indicated and listed credit card & debts accounts ending #1818, #9125, #8667, #8014, that were closed on dates January 20, 2010, January 21, 2010, December 31, 2011 & April 30, 2012, respectively. See Exhibit 3. Banco Popular certification of debts dated August 2015, pgs. 6-7. (Refer also to Adv. Proceeding case 14-00137 Doc. #78, pgs. 17-20, 29) Those credit card accounts were listed by debtor and claimed by creditor in this bankruptcy case filed by JCB in case 11-06637. In addition, Banco Popular provided evidence that the Gusupa commercial debt claimed with reference number ending #8014 was paid in full before amended schedules.

18. Simultaneously, a week after debtor filed for bankruptcy, his parents filed for a chapter 7 bankruptcy under case #11-07334. Trustee Noreen Wiscovitch was appointed to both bankruptcy cases. Debtor Juan

---

[3] The motions of the child support case and the referral are not pertinent to Trustee Adversary & Appellate proceedings because the child support debt is firm and final, and Trustee cannot alter the State Court Final Judgment. Trustee intended to deviate the attention from the issues related to the exemption scheme, the misappropriation, and the decapitalization of the assets and by intending to collect the corporation debts in case 11-06637 to leave the corporation in case 11-07334 in the hand of the debtor with no debts as a clean slate. In addition to defamation and provoking economic, professional harm, Trustee intends to alter and confuse the claim presented, deviating the attention from issues and undermine my credibility to complete the unsupported exemption which led to the scheme to conceal debtor assets and corporation assets which is contrary to bankruptcy law and case management, 18 USC § 153, 154, 157, § 3057.

Balcells Grau falsely misstated in the 341 meetings that he was the owner of Gusupa Corporation and stated that the value of incorporation of Gusupa was $1,000. Exhibit 4. 341 meetings Transcript presided by Trustee, pgs. 8-12. Trustee had Audited Financial Statements of Gusupa Corporation stating Debtor Juan Carlos Balcells Gallarreta and I as sole owners. Exhibit 5. Audited Financial Statements, pgs. 13-15. At the time of the petitions, Gusupa Corporation had a profitable operation and multiple properties with equity. Knowing this, and having the necessary evidence, Trustee permitted a 100% share exemption in case #11-07334 to insiders who Trustee knew were not the owners of the corporation. To make it worse, Trustee permitted the exemption under the false value of $1,000, knowing that the corporation had multiple properties valued for much more than $1,000.

19. After granting the unsupported exemption to insiders that were non-owners and for a materially misstated value, insider parents transferred one of the Gusupa Corporation property to insider sister and brother in law, Ana Balcells Gallarreta and Miguel Monroig Almodovar, for less than the market value. Exhibit 6. Property Registry Certification Transfer to Ana Balcells Gallarreta & Miguel Monroig, pgs. 16-26 See also. Property Register from Utuado Property and Estate & Ave. De Diego #604, SJ.

20. After debtor filed for bankruptcy, Debtor violated the bankruptcy Automatic Stay and sold the power boat without the authorization from the Bankruptcy Court and without my consent[4]. Trustee did nothing to prevent the sale or to recover the concealed actual value. Debtor allegedly sold the power boat for less than half of insured value, defrauding the bankruptcy court, all creditors, and me as the co-owner of the property. Debtor nor Trustee paid my participation in such asset.

21. The bankruptcy estate was not properly composed as per 11 USC § 541(a)(1)[5], Trustee composed the estate not including debtor participation in the assets concealed by debtor and participation in corporation shares but included the corporation debts. Trustee has been ignoring the basic rules established for post marital community property and ignoring such corporation laws, this results in concealing debtor assets. Trustee has been holding the residential property hostage since 2011, for almost 11 years to pay principally corporation non consumer debts, some fabricated to misappropriate assets and defraud the post marital community property and me.

22. After filing the divorce, the bank included in the bank file new financial statements simulating a corporation transference but did not corroborate my consent for the transference, eventhough, they knew I appeared as owner. During all this time and simulated transactions, Banco Popular had custody of all the documents stating that we were sole owners, they had all the information demonstrating debtor's ownership in corporation and had evidence of Gusupa's financial activities and assets stated from loan

---

[4] Art. 91 of the Civil Code (1930), Quetglass Álvarez v. Carazo Castillo. 134 D.P.R. 644 (1993).
[5] The Bankruptcy Code states that the state law is the governing law, Butner v. United States, 440 US 48 (1979). The application of the state law does not interfere with the provisions of the Bankruptcy Code because debtor assets and debtor participation in the assets is considered to compose the estate.

application. Banco Popular participated in both banckruptcy cases and permitted the corporation exemption to nonowners and for less that it was worth.

23. Trustee and bank knew form the beginning that debtor participation in the residential property was inexistent, since he maintained more than half of the post marital community assets and has a substantial child support debt. Trustee and bank have been trying to pay debts principally from the corporation which are not consumer debts, debts incurred while married to Cristina Santaella, and debtor child support debt, with what is left of my participation in the post marital community property. In other words, Trustee is requesting permission to pay debtor debts with my participation in such assets.

IV.    Trustee's Failure to Properly Compose the Bankruptcy Estate & Matters Related

24. To determine debtor's bankruptcy estate, we must first properly compose all the assets belonging to the post marital community property, that belong to debtor and myself. After properly composing the post marital community property we must pay the matrimony debts incurred for the family's needs, apply credits and after this, distribute the corresponding community property to each ex-spouse. The post marital community property distribution must be made in order to determine debtor participation in the community property that will enter and compose the bankruptcy estate. In bankruptcy cases, the property interests of the debtor are governed by State Law, for this reason the court must apply State Law. Under State Law, the post marital community property must follow the rules applicable to inheritance distributions. Following Judge's Besosa's interpretation in the case Cruz Gascot v. Hima, 728 FSupp 2nd 14 (2010), he stated that "*Until the estate is partitioned and adjudicated, the community of property remains intact and "no one of the heirs may be considered to be the sole and exclusive owner of any particular portion or fixed and specific aliquot part of the property of the heritage." Id. The supreme court interpreted the Civil Code to "confer a right to each and all of the properties of the heritage, but not a specific right to certain properties, which can only be acquired by an adjudication lawfully made in partition proceedings.*" In other words, to determine a debtors property interest in an inheritance one must first liquidate and distribute the inheritance, after the liquidation the participation corresponding to the debtor will enter his bankruptcy estate.  For the composition of the Bankruptcy Estate, the interest that corresponds to the debtor in the post marital community property, in essence, is the same to the interest used to compose debtor bankruptcy estate, as per 11 USC § 541. The composition of both can co-exist and are necessary to comply with Bankruptcy Law, State Law and equity. The request of post marital distribution is not contrary to Bankruptcy law and does not interfere with the provisions of the Bankruptcy Code. On the contrary, it is in accordance with the Bankruptcy Code that provides that debtor asset will be used to compose the bankruptcy estate and not the participation of non-debtors. Until the distribution of the post marital assets, Trustee cannot determine or know the respective participation of the debtor in the post marital assets to compose the Bankruptcy Estate. In the evidence submitted to Trustee, the Audited Financial Statements states that corporation value was more than

$1,000,000.00 including debts. The residential property alone was valued for $260,000, that is less than 25% of assets that compose the estate. Exhibit 7. Table for Inventory of Post Marital Property, pg. 27. Debtor and insiders have absolute control of the corporation and its assets. If the Corporation is not considered and brought for distribution, Debtor doesn't have participation in the residential property. Trustee has no power to pay debtor debts by selling properties in which debtor has no interest. By following State Law, applicable federal and state case law[6], the post marital community property must be properly composed, distributed, and adjudicated to be able to determine the debtor's assets that will compose the bankruptcy estate[7].

25. Also, for the reasons stated above, since 2014 Banco Popular's has been claiming a debt of a credit card obtained in 1997 in the benefit of the family that is part of the post marital community property. Since the liquidation of the post marital community property has not been made, if such debt exists debtor is responsible for half of the supposed debt and Banco Popular should have claimed at the debtor bankruptcy case but Banco Popular did not include such claim in the bankruptcy case and decided to make a complaint against me at the State Court since 2014; such action constitutes a violation of the Automatic Stay.

26. Since the beginning of the bankruptcy proceedings, I informed that the distribution for the post marital community property had commenced in 2008 but was pending and paralyzed due to the bankruptcy. For this reason and for procedural economy, I requested the Bankruptcy Court to distribute the post marital community property. Lifting the automatic stay as the bank requests would only create more problems because the bank will not be able to do anything with the property because the Puerto Rico Civil Code states that no asset belonging to a post marital community property can be disposed of before distributing the post marital community property[8]. Before lifting the automatic stay, the bankruptcy court must first liquidate and distribute the post marital community property that has been requested since 2008 and pending since 2011 (and obstructed) and adjudicate the residential property to me.

27. Furthermore, by applying State Law 8 LPRA 524, Article 25, the child support debt, legal interests, and penalties owed by debtor constitute an encumbrance for the amount of the payment owed over all income, assets, real property and movable property of the debtor. The assurance of effectiveness by the corresponding attachments shall not require prior judicial notice or hearing. This means that the presumed participation of the debtor in the residential property is encumbered by the amount of payment corresponding to the child support debt and interest. The State's Special Child Support Law (8 LPRA 524) follows Congress decree to comply with child support rules, as stated in Congress's Child Support Enforcement Program. If Trustee does not comply with applicable child support state law she would be breaching a Congress mandate. Congress has made it evidently clear that the Federal Government has a pressing interest for parents to comply with their

---

[6] BL Investments v. Rivera, 181 DPR 5 (2011), Island Holdings v Ashford RJF, 2019TSPR042, Betancourt Gonzalez v. Pastrana Santiago, 2018 TSPR 68.

[7] Besides the post marital community assets distribution, I also requested to obtain the adjudication of the residential property to cover a portion of the child support debt as should be done according to Child Support Special Law, 8 LPRA 524 and/or by applying case Figueroa Robledo v. Rivera Rosa, 149 DPR 565 to pay child support debt as a credit in the participation of the post marital assets. Request was made also considering Debtor maintained 100% of corporation and assets & evaded distribution.

[8] Betancourt Gonzalez v. Pastrana Santiago, 2018 TSPR 68

responsibility as child supporters, since child support is a human right arising from the Federal Constitution. Congress has also enacted the Deadbeat Parent Act, in which it states that debtor parents that abandon the jurisdiction to evade paying child support will be charged double their debt. In this case debtor didn't even have to physically abandon the jurisdiction to evade his responsibility, by filing for Chapter 7 he has obtained the same result of abandoning the jurisdiction to be out of reach of State Court. Trustee has known this from the beginning of the case, she has known about the child support debt since 2011 and has evaded the payment since that date. By Trustee's subrogation of debtor's rights and responsibility, Trustee was the one responsible to ensure the payment of the child support debt, since Trustee has not ensured payment since 2011, Trustee has been violating child support state and federal law. Trustee has continued debtor scheme to use the bankruptcy proceedings to evade child support payment. Trustee has tried to reduce and misstate the amount owed that was determined and established by the PR State Court and that is final and firm. [9] Moreover, Trustee even stated that she would wait for the minors to become of legal age and then, even tried to eliminate the child support debt by claiming that the minors had become of age. Trustee delayed the process with bad intentions and unclean hands to deprive the children of their Constitutional right. When the bankruptcy proceeding started the children where minors and I made the claim as the custodial parents and the claim has been made since 2011. The children, now youth, had previously authorized me through an affidavit to represent them in their stead, if the court would like a reaffirmation from the minors, now youth, are available to come before the court.

28. Since 2011 Trustee has insisted on claiming that the debtor has an interest in the residential property, the debtor's interest in the residential property is clearly inexistant since he maintained more than half of the post marital community property and has a substantial child support debt. Trustee, even knowing that debtor has an inexistant interest in the property, has been insisting on the sale of the property since 2014. The property has been designated as homestead for the children now youth since the filling of the bankruptcy petition.

29. In summary, same Trustee approved an unsupported exemption of 100% Gusupa corporation shares in case 11-07334 which validated transfer to debtor parents (Balcells parents) who now control and have continued the operation of the corporation Gusupa. Gusupa maintained the equity, assets and corporation commercial properties. Trustee exempted corporation shares for alleged value of $1,000.00 while having evidence of Audited Financial Statements and from 341 meetings that such value was false. Trustee had Audited Financial Statements, CPA forensic reports, among other evidence, stating the corporation value of $1,000,000.00 and stating ownership. Exhibit 8. CPA Forensic Reports, pgs. 28-35. After having such evidence, Trustee presented the adversary proceeding in case 11-06637 to request permission to sell the residential house to pay alleged non-priority unsecure debts principally from Gusupa Corporation (including corporation debt of $250,000 that was paid more than once). Trustee filed the adversary proceedings, after

---

[9] US v. Molak, 276 F3d45(2002)

having such evidence, Trustee has been intending to pay the corporation debts in case 11-06637 with the residential property[10], while same Trustee approved an exemption of 100% of the shares of the same Gusupa corporation (with a false value) in another bankruptcy case 11-07334. The omissions of not including the corporation, and validating an unsupported exemption completed the misappropriation & defalcation of the corporation and assets. Scenario result is concealing the assets of the debtor while validating debtor to keep the corporation assets with no debts, which is a schemes contrary to bankruptcy law, case management and duties. 18 USC § 153, 154, 157, § 3057.

30. All the actions done by Trustee have deprived me from my property rights, distorted the bankruptcy process to evade corresponding distribution, made an illegal taking of the residential property, affected my credit and provoked unnecessary proceedings and expenses and evade the collection of the child support for 11 years.

31. Therefore, the additional interest the bank provoked to himself should be eliminated because the bank contributed and any request to add the interest provoked. The bank cannot claim lack of adequate protection when the bank participated in the frivolous proceedings maintained by the Trustee that have extended the case to maintain a simulated bankruptcy with the purpose to conceal debtor income and assets.

32. Allowing debtor to continue without distributing corporation assets and continue without paying child support debt and continue insisting in the sale, would result in legalizing fraud and validating defalcations and misappropriation.

V.     Request of Remedies

33. For the reasons mentioned above, I request the Bankruptcy Court to deny Banco Popular's request for lift of the automatic stay. Trustee, debtor and Banco Popular are the only ones responsible for the provoked accrued interest and penalties. I offered on several occasions; to pay the mortgage debt if the property was adjudicated to me. The provoked interest and time elapsed have not been my fault. I have paid $39,000 on mortgage payments post-petition until the filing of the Adversary Proceedings. (The remaining balance as of that date was $29,000 and if intended evasion of the post marital distribution such amount correspond to the debtor.

34. I request the any interest payments and penalties requested by Banco Popular be imposed to the Trustee for maintaining a simulated bankruptcy.

35. I requested the distribution of the post marital community property. The composition includes but is not limited to the assets plus interest stated Exhibit 7 in Corporation valued in $1M, three commercial properties valued at $500,000 each, power boat for $35,000, residence valued $260,000, among others. In the alternative, I request that the court determine that the debtor participation in the residential property located at

---

[10] During the filing of the Bankruptcy case, the house was established homestead by P.R. State Court. Also as per Civil Code of 2020 correspond establishment the principal residence as homestead; also requested Ley del Derecho a la Protección del Hogar Principal y el Hogar Familiar, Law 195 - 2011. DeGiacomo v. Traverse (In re Traverse), 753 F.3d 19 (1st Cir. 2014); Albarran v. Rivera, 627 B.R. 765 (1st Cir. 2021)

Villas Reales is inexistant because debtor maintains and controls more than half of the assets including, the corporation assets that represents $1M in assets. Since debtor controls the majority of assets, and debtor has no participation left in the residential property, I request that the property be adjudicated to me until the distribution of the remaining post marital assets is conducted.

36. In the alternative, if the court understands that debtor possesses an interest in the residential property, I request the court adjudicate the participation as per audited financial statements and determine that the debtor participation in the residential property has an encumbrance for the amount of the payment corresponding to the child support debt, applicable interest and penalties.

37. I also request the Bankruptcy Court to take knowledge that the child support debt accrued to this day is of $250,000 including the principal and the corresponding six percent legal interest for eleven (11) years accrued monthly[11].

38. The bank could have collected the corporation debts from debtor participation in the assets from the corporation and evade provoking eleven (11) years of proceedings to simulate the collection of corporation debts.

**WHEREFORE** it is respectfully requested that this Honorable Bankruptcy Court to;

a) Deny Banco Popular's request for lift of the automatic stay.

b) Order the payment of the child support debt and the mandatory applicable legal interest for the child support debts as per cited State Law.

c) Order the payment of the applicable penalties for the failure to pay legal support obligation as per 18 U.S.C.§228.

d) I requested the distribution of the post marital community property. The composition includes but is not limited to the assets plus interest stated in Exhibit 7, these assets are Corporation valued in $1M, three commercial properties valued at $500,000 each, power boat for $35,000, residence valued $260,000, among others. Table Inventory for Distribution of Post Marital Community Property. In the alternative, I request that the court determine that the debtor participation in the residential property located at Villas Reales is inexistant because debtor maintains and controls more than half of the assets, the corporation assets that represents $1M in assets. Since debtor controls the majority of assets and debtor has no participation left in the residential property, I request that the property be adjudicated to me.

e) In the alternative, if the Court finds that the debtor has a participation in the residential property, I request the court to Determine that the debtor's participation in the residential property has an encumbrance for the amount of the payment corresponding to the child support debt, applicable interest and penalties for the child support debt claimed to the Bankruptcy Court since February 2012; and order the distribution of the post marital community property plus interest. Distribute the assets or the value of the assets that the debtor disposed to defraud the post marital community according to State Law Articles 326 -340 & 91 of the P.R. Civil Code of 1930, & case law Quetglas Carazo.

f) Order investigation and recovery of the debtor actual spouse income and assets to order the collection for any of the remaining unpaid balances.

---

[11] Art. 1649 of PR Civil Code of 1930, Rodriguez Sanabria v. Soler Vargas 13S DPR 779 (1994). The claimed prepetition accrued debt not paid corresponds to the period before July 2011 plus the legal interest accrued at 6% monthly.

g) I also request the Bankruptcy Court to take knowledge that the child support debt accrued to this day is of $250,000 including the principal and the corresponding six percent legal interest for eleven (11) years accrued monthly.

h) I request the any interest payments and penalties requested by Banco Popular be imposed to the Trustee for maintaining a simulated bankruptcy.

CERTIFICATE OF SERVICE: I hereby certify that on this same date, I electronically delivered the foregoing to the Clerk of the Court, which will send notification of such filing to all participation of CM/ECF system.

RESPECFULLY SUBMITTED

In San Juan, Puerto Rico, on March 22, 2023.

/s/ Amarilis González, pro se
P.O. Box 984
Guaynabo, Puerto Rico 00970
Tel. 787-605-0704
Email: amarilis@ymail.com

# **BANCO POPULAR**

DIVISION DE SERVICIOS HIPOTECARIOS
PO BOX 362708
SAN JUAN, P.R. 00936-2708

Exhibit 1

JUAN C BALCELLS-GALLARRET
AMARILIS GONZALEZ-GARCIA
PO BOX 11083
SAN JUAN PR  00920

63

## ESCROW DISBURSEMENT
## CLEARING

| Date | Check Number | Amount | Account Number |
|------|-------------|--------|----------------|
| 03/04/2013 | 5002-82700314788 | $*****************1,105.00 | 07101001-1799536 |

THIS DOCUMENT HAS A VOID PANTOGRAPH · BORDER CONTAINS MICROPRINTING AND A TRUE WATERMARK ON THE BACK · HOLD AT AN ANGLE TO VIEW

# **BANCO POPULAR**

DIVISION DE SERVICIOS HIPOTECARIOS
PO BOX 362708
SAN JUAN, P.R. 00936-2708

ESCROW DISBURSEMENT
CLEARING

101-201
215

Check No.  5002-82700314788

Date  03/04/2013

PAY     ***ONE THOUSAND ONE HUNDRED FIVE DOLLARS AND 00 CENTS***

**Check Amount**

$***************1,105.00

TO THE ORDER OF
JUAN C BALCELLS-GALLARRET
AMARILIS GONZALEZ-GARCIA
PO BOX 11083
SAN JUAN PR  00920

Account Number: 07101001-1799536



Member of FDIC and Federal Reserve System

⑆827003147885⑆ ⑈02150201⑈ 000⑉050024⑈

 **BANCO POPULAR**

DIVISION DE SERVICIOS HIPOTECARIOS
PO BOX 362708
SAN JUAN, P.R. 00936-2708

Exhibit 1

JUAN C BALCELLS-GALLARRET
AMARILIS GONZALEZ-GARCIA
PO BOX 11083
SAN JUAN PR   00920

G3

**ESCROW DISBURSEMENT CLEARING**

| Date | Check Number | Amount | Account Number |
|------|--------------|--------|----------------|
| 03/04/2013 | 5002-82700314788 | $****************1,105.00 | 07101001-1799536 |

---

THIS DOCUMENT HAS A VOID PANTOGRAPH BORDER CONTAINS MICROPRINTING AND A TRUE WATERMARK ON THE BACK - HOLD AT AN ANGLE TO VIEW

 **BANCO POPULAR**.

ESCROW DISBURSEMENT
CLEARING

101-201
——
215

DIVISION DE SERVICIOS HIPOTECARIOS
PO BOX 362708
SAN JUAN, P.R. 00936-2708

Check No.  5002-82700314788

Date  03/04/2013

PAY     ***ONE THOUSAND ONE HUNDRED FIVE DOLLARS AND 00 CENTS***

**Check Amount**

TO THE ORDER OF
JUAN C BALCELLS-GALLARRET
AMARILIS GONZALEZ-GARCIA
PO BOX 11083
SAN JUAN PR   00920

$*********************1,105.00

Account Number:  07101001-1799536

Member of FDIC and Federal Reserve System

⑈82700314788⑈ ⑆02150201⑈ 000⑈0500 24⑈

Exhibit 2

Form AS 6168.1
Rev. Apr 01 18



**Government of Puerto Rico**
**DEPARTMENT OF THE TREASURY**
Internal Revenue Area

2018 - Certificate Of Release of Tax Lien (Release Of Estate)

ǁᵢₗᵢₗᵢₗᵢₗₗᵢₗᵢₗₗₗⁱₗₗᵢₗᵢₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗᵢₗₗₗₗᵢₗᵢₗₗₗₗₗₗⁱₗₗₗₗₗₗₗₗₗₗₗₗₗᵢₗᵢₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗᵢₗₗₗₗₗₗⁱₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗᵢₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗᵢₗₗₗₗ

| | |
|---|---|
| Date: | August 05, 2021 |
| Taxpayer ID: | 05317-98016 |
| Letter ID: | L1937885056 |

000742-T002
SUCESIÓN DE ALFREDO SANTAELLA LATIMER
PO BOX 9023111
SAN JUAN PR  00902-3111

Name of Decedent:  ALFREDO A. SANTAELLA LATIMER

Social Security Number: XXX-XX-5068

Date of Death:  May 24, 2021

Pursuant to the powers granted to the Secretary of the Treasury by Section 2054.02 of the Puerto Rico Internal Revenue Code of 2011, as amended, we issue this **Certificate of Release of Tax Lien**, regarding the properties listed in the attachments.

Any addition or alteration made to these documents voids the issuance of this Certificate for all purposes.

Assistant Secretary
Internal Revenue Area

Schedule(s): Properties and Value of the Estate

3L020
5

## Schedule A: Estate

| Item Number | Type of Property | Description of the Property | Indicate How the Decedent Acquired the Property | ID Number (ex. cadaster, account) | Property Located in Puerto Rico Yes (Y) or No (N) | Community (C) or Separate (S) Property | Percentage of Participation of the Decedent | Basis of Property |
|---|---|---|---|---|---|---|---|---|
| 1 | A - Real Estate | Solar con Residencia principal localizada en Urb Santa Maria, 1850 Calle Acacia, San Juan, PR 2,884.16 mts cuadrados, Finca 20891, inscrita al folio 141 del tomo 613 de Monacillos (Section III de San Juan) | C - Trading | 11400#0/6113001 | Yes | Community | 50.00 | $400,000.00 |
| 2 | A - Real Estate | Parcela de terreno radicada en la Urb Santa Maria, 1854 Calle Acacia, San Juan PR, Finca 20881, originalmente inscrita en el Folio 72, del tomo 613 de Rio Piedras. | C - Trading | 11400#0/6114000 | Yes | Community | 50.00 | $50,000.00 |
| 3 | A - Real Estate | Solar y residencia localizada en 144 Calle Escudero, Culebra PR, 458.03 mts cuadrados, Finca 1067 inscrita al Folio 40 del tomo 23 de Culebra, Inscripcion primera | C - Trading | 476000000105002 | Yes | Community | 50.00 | $125,000.00 |
| 4 | A - Real Estate | Solar y residencia localizada en 146 Calle Escudero, Culebra, PR. Finca 713, inscrita al folio 150 del tomo 15 de Culebra, Cabida 100.15 mts cuadrados. | C - Trading | 476000000105009 | Yes | Community | 50.00 | $295,000.00 |
| 5 | A - Real Estate | Residencia en Lote 8, Bloque 37, Columbus Landings #3, Isla de San Salvador, Las Bahamas 11,396 pies cuadrados. | C - Trading | 03X7#091 | No | Community | 50.00 | $8,205.00 |
| 6 | B - Cash, Including Cash in Banks, and Accounts in Brokerage Houses | Cuenta de banco personal con First Bank de Puerto Rico, Cta # 1100030173. | O - Other | 1100030173 | Yes | Community | 50.00 | $38,804.03 |
| 7 | A - Real Estate | Participacion del 16.6666% en varias parcelas de terreno rusticas con cabida de aproximadamente 58 cuerdas en los Barrios Flamenco y Resaca de Culebra, PR, Escritura #69, Culebra, fincas 609 a 619 registradas en el registro de Fajardo; tomo 13 de Culebra. Catastros numero: 473-000-001-07-000 473-000-006-04-000 473-000-006-11-000 473-000-007-07-000. | C - Trading | 473000000107000 | Yes | Community | 50.00 | $23,005.00 |
| 8 | C - Actions and Other Values | Derecho hereditario en la Sucesion de Luis Santaella e Izalia Lalimer en su participacion del 16.6667% de las mismas fincas listadas en la partida 7. El causante tiene el derecho hereditario de 1/3 de la participacion de la sucesion. | H - Heritage | 473000026M4000 | Yes | Separate Property | 100.00 | $48,280.00 |
| 9 | C - Actions and Other Values | Participacion en el capital social de Titana LLC. Una compañia de responsabilidad limitada, incorporada en PR. | O - Other | 66097/23/6 | Yes | Community | 49.75 | $2,764,322.00 |
| 10 | C - Actions and Other Values | Participacion de 73.846% del capital social de Harbor Bunkering Corporation, una corporacion de Puerto Rico. | O - Other | 660645388 | Yes | Community | 50.00 | $11,808,174.00 |

| Item Number | Type of Property | Description of the Property | Indicate How the Decedent Acquired the Property | ID Number (ex.cadaster, account) | Property Located in Puerto Rico Yes (Y) or No (N) | Community (C) or Separate (S) Property | Percentage of Participation of the Decedent | Basis of Property |
|---|---|---|---|---|---|---|---|---|
| 11 | G - Furniture, Appliance or Household Equipment | Muebles, enseres y otros del hogar. | C - Trading | 5068 | Yes | Community | 50.00 | $25,000.00 |
| 12 | C - Actions and Other Values | Participacion en el Capital Social de Tramar, LLC, una compañia de responsabilidad limitada de Puerto Rico. | O - Other | 6608U8015 | Yes | Community | 50.00 | $169,813.00 |

Exhibit 3

 **BANCO POPULAR.**

Popular Center
San Juan, Puerto Rico 00936-2708
Telephone (787) 765-9800 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

5 de agosto de 2015

Leda. Amarilis González
PO Box 11083
San Juan, PR 00922

RE:   GUSUPA INC
      CASO BPPR: 33001-27JUL15
      ORDEN
      K CD2013-2598 (901)

Estimada Licenciada González:

Banco Popular de Puerto Rico recibió la Orden expedida en el caso de referencia.

En cumplimiento de dicha Orden, luego de realizar una búsqueda en nuestros archivos
computadorizados, se identificaron las siguientes cuentas a nombre de

Gusupa, Inc.:

| CUENTA | TIPO DE CUENTA | ESTATUS |
|---|---|---|
| 1019000741094886 | Préstamo Comercial | Apertura 05-10-12<br>Tirado a pérdida |
| 022-048014 | Cuenta de Cheques | Apertura 02-01-93<br>Cerrada 04-30-12 |

Juan C. Balcells Gallarreta:

| | | |
|---|---|---|
| 0377812326421818 | Tarjeta de Crédito | Apertura 07-26-00<br>Cerrada 01-20-10 |
| 4549210114749126 | Tarjeta de Crédito | Apertura 11-01-97<br>Cerrada 01-21-10 |
| 0000100006242684 | Certificado Depósito | Apertura 05-27-09<br>Cerrado 06-25-09 |
| 347-056667 | Cuenta de Cheques | Apertura 11-09-07<br>Cerrada 12-30-11 |
| 427-279330 | Cuenta de Ahorros | Apertura 02-05-03<br>Activa |
| Balance: $29.30<br>0700330111 | Préstamo Hipotecario | Apertura 12-17-96<br>Activo |

Juan Balcells Grau:

| | | |
|---|---|---|
| 0377811321187119 | Tarjeta de Crédito | Apertura 10-11-99<br>Cerrada 01-20-10 |
| 0377811323990452 | Tarjeta de Crédito | Apertura 05-03-00<br>Cerrada 01-20-10 |
| 0377812326086348 | Tarjeta de Crédito | Apertura 07-12-00<br>Cerrada 01-20-10 |

Lcda. Amarilis González
5 de agosto de 2015
2

Juan Balcells Grau:

| CUENTA | TIPO DE CUENTA | ESTATUS |
|--------|----------------|---------|
| 4549549615514797 | Tarjeta de Credito | Apertura 11-06-09<br>Cerrada 01-21-10 |
| 4549911734050154 | Tarjeta de Credito | Apertura 06-14-95<br>Cerrada 01-20-10 |
| *027-236722 | Cuenta de Cheques | Apertura 01-12-00<br>Cerrada 03-29-13 |
| 039-393518 | Cuenta de Cheques | Apertura 11-09-07<br>Cerrada 12-14-09 |
| 427-031482 | Cuenta de Ahorros | Apertura 09-02-93<br>Cerrada 04-13-10 |

Leonie Gallarreta Otheguy.

| | | |
|--------|----------------|---------|
| 4549006026718012 | Tarjeta de Credito | Apertura 08-09-95<br>Cerrada 01-20-10 |

*En conjunto con Leonie Gallarreta Otheguy

No se identifican cuentas adicionales, acciones o bonos

Relacionado a las cuentas de inversiones, deberá pagar y diligenciar una Orden directamente a
Popular Securities (787)758-7400

la producción de los estados bancarios en formato digital (CD) y conllevará un costo de $1.25
por hoja y de $2.00 por cada CD si la producción es de 10 hojas o mas. De lo contrario la
producción se documentara en una de $0.10 por hoja.

Se confirmara la identificación y el número final de documentos una vez se reciba la
confirmación de acuerdo de pago. De requerir un estimado por la producción, deberá solicitarlo
**por escrito** haciendo referencia a nuestro número de caso BPPR

Atentamente,

_[signature]_

Juan A. Betances
Oficial
Requerimientos Legales

X Pagos

Exhibit 4

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

```
                              *
RE:                           *  CASE NO.:   11-07334 MCF
                              *
    JUAN BALCELLS BRAU        *
    LEONIE GALLERETA          *
                              *
         Debtors              *
--------------------------------  *
```

341 MEETING OF CREDITORS

DATE         :    October 4, 2011

TIME         :    9:30 a.m.

CLIENT       :    AMARILIS GONZÁLEZ GARCÍA, Esq.

ADDRESS      :    San Juan, Puerto Rico

HELD ON      :    Ochoa Building
                  Old San Juan
                  San Juan, Puerto Rico

```
 1
 2                          APPEARANCES
 3
 4   TRUSTEE:
 5        Hon. Noreen Wiscowitch Rentas
 6
 7   U.S. TRUSTEE:
 8        Emilio Miranda, Esq.
 9
10   FOR DEBTORS:
11        Carlos Rodriguez Quesada, Esq.
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                    *        *        *

 2        Los procedimientos se desarrollaron según surgen de

 3    la siguiente transcripción.

 4    HON. SÍNDICO:

 5        'Trustee calls the case of' Juan Balcells Grau y

 6    Leonie Gallareta, caso número 11-07334.

 7                        JURAMENTACIÓN

 8    HON. SÍNDICO:

 9        Por favor, levanten su mano derecha.  ¿Juran ustedes

10    decir la verdad, solamente la verdad?

11    SR. BALCELLS:

12        Lo juramos.

13    HON. SÍNDICO:

14        Dígame su nombre, señor.

15    SR. BALCELLS:

16        Juan Balcells Grau.

17    HON. SÍNDICO:

18        Señora, ¿su nombre?

19    SRA. GALLARETA:

20        Leonie Gallareta.

21        P    ¿Su dirección residencial?

22    SR. BALCELLS:

23        367 Espinosa, Borinquen Gardens, Río Piedras, 00926.

24        P    ¿Esa es su misma dirección, señora?

25
```

1    P    Okey.

2    R    Ya cosas que vienen con su, que dicen 'Puerto

3    Rico'.  Otras son artesanías y no dicen nada.

4    P    Okey.  ¿Y qué tiene de inventario, más o menos,

5    en dólares?

6    R    Diez mil, quince mil.

7    P    ¿Y están guardados ahí, en ese local de De

8    Diego?

9    R    En la De Diego, sí.

10    P    ¿Y como cuánto venden mensual?

11    R    Aproximadamente... Bueno, este mes ahora último

12    se vendieron como 6,000 o 7,000 dólares, pero generalmente

13    se venden 15,000.  A veces se venden 18.  Se llegaron a

14    vender muchísimo más, pero eso era en el tiempo de las

15    vacas gordas.

16    P    ¿Tiene    los    estados    financieros    de    la

17    corporación, licenciado?

18    LCDO. RODRÍGUEZ:

19    No, no pensé que...  Pensé que el caso era de él

20    personal.  Eso no lo tengo conmigo aquí.

21    HON. SÍNDICO:

22    Okey.  ¿Y cómo evaluó que las acciones de Gusupa,

23    Inc. tenían un valor de 1,000 dólares?  ¿Cómo hizo la

24    determinación?

25

1   SR. BALCELLS:

2       Esa determinación fue sugerencia del contable, que
3   ese fue el valor que se les dio cuando se abrió la
4   compañía y él dijo que mientras no se fueran a vender,
5   pues, no había una valorización como tal, sino el día que
6   se fueran a vender, se valorizaban. Pero como no se han
7   vendido, pues, entonces, no se han valorizado. Los
8   estados financieros de Gusupa están presentados, digo, las
9   planillas están presentadas con pérdidas por más de cinco
10  o seis años para atrás.

11      P    Okey.

12      R    De hecho, en la información del Departamento de
13  Estado, está ahí la información que está con una pérdida
14  el año pasado de doscientos y pico de mil dólares por ahí.

15      P    Okey. Yo necesito esos estados financieros y
16  las planillas de los últimos...

17  LCDO. RODRÍGUEZ:

18      Las planillas de Gusupa.

19  HON. SÍNDICO:

20      Sí. De los últimos tres años para poder hacer una
21  evaluación si esto tiene algún valor para el 'statement'.

22  LCDO. RODRÍGUEZ:

23      Muy bien.

24  HON. SÍNDICO:

25      ¿Quién es el contable?



Exhibit 5

# Professional Consulting & Accounting
## Taxes

August 15, 2001

Mr. & Mrs. Juan Carlos Balcells
Rio Piedras, Puerto Rico

As per your instructions we proceed to review and prepare your financial statements as of December 31, 2000 with the information submitted by you.

Based on our review we conclude the accompanying financial statements are in conformity with generally accepted accounting principles.

Please call us if you need additional assistance.

Cordially yours,

**PROFESSIONAL CONSULTING &
ACCOUNTING**

Milagros Hernández

BankTrust Plaza, Avenida Ponce de León #255, Suite #805, Hato Rey, PR 00919 • PO Box 10327, San Juan, PR 00922-0327
Tels (787) 765-9431 / 758-2877 / 754-3043 • Fax (787) 756-5450 • E-Mail: profmh@prtc.net

pg. 13

## Mr. & Mrs. Juan Carlos Balcells
### Statement of Financial Condition
### December 31, 2000

Assets

| | |
|---|---|
| Cash on hand and bank | $ 15,000 |
| Investment in Gusupa, Inc. – Note 2 | 1,000,000 |
| Residence – Note 3 | 425,000 |
| Motor Boat Mako 87 | 35,000 |
| Total Assets | $1,475,000 |

Liabilities

| | |
|---|---|
| Mortgage payable – Note 3 | $ 119,172 |
| Revolving charges | 20,000 |
| Total Liabilities | 139,172 |

| | |
|---|---|
| Estimated income taxes on the difference between the estimated current values of assets and the estimated current amounts of liabilities and their tax bases – Note 4 | 178,000 |
| Net worth | 1,157,828 |
| Total | $1,475,000 |

Note 1 – Summary of significant accounting policies

The accompanying financial statement include the assets and liabilities of Mr. & Mrs. Juan Carlos Balcells. Assets are stated at their estimated current values, and liabilities at their estimated current amounts.

Note 2 – Gusupa, Inc. Investment

Mr. & Mrs. Juan Carlos Balcells are the sole stockholders of Gusupa, Inc. This company is engaged in the wholesale business of miscellaneous merchandise. In November 1996 they opened a retail store, Rustiko, next to Gusupa Building. The corporation imports direct from manufacturers furniture, gift, souvenirs, and accessories from Mexico and South America. A condensed audited balance sheet of the Company is summarized below as of May 31, 2001:

| Assets | |
|---|---|
| Current Assets | $ 593,954 |
| Fixed Assets | 577,751 |
| Total Assets | $1,171,705 |
| | |
| Liabilities | |
| Current liabilities | $ 175,576 |
| Long term debts | 467,645 |
| Total Liabilities | 643,221 |
| Net Worth | $ 528,484 |

Sales and net income for year ended May 31, 2001 were $ 776,172 and $ 87,956 respectively.

Total estimated value of Corporation:                    $1,000,000

The total estimated market value of the corporation owned by Mr. and Mrs. Juan Carlos Balcells was based on the most probable sales value estimated for the corporation if it were to be sold.

Note 3 – Residence

Residence and land market value was based in recent sales of similar structure in same area. Mortgage secured by residence is payable in monthly installments of $1,167 including principal and interest at a rate of 7% maturing in year 2116.

- 3 -

Exhibit 6

Certificación :960

ESTADO LIBRE ASOCIADO DE PUERTO RICO
DEPARTAMENTO DE JUSTICIA
REGISTRO DE LA PROPIEDAD



SECCION TERCERA DE SAN JUAN

# CERTIFICACIÓN

## RELATIVA A LA
## FINCA:948
## TOMO:26
## FOLIO: 162

## DE MONACILLOS

FECHA: 21 de noviembre de 2012

## A INSTANCIA DE
## AMARILIS GONZALEZ

# 602

16.6

Estado Libre Asociado de Puerto Rico
Departamento de Justicia
Registro de la Propiedad
Seccion Tercera de San Juan

_26_ de _Nov_ de 2012.

Hon: _____

Registrador de la Propiedad

Literal

Estimado Registrador:

Solicito expida certificación registral del tomo _26_ del folio _162_ de la finca

Número _948_ de Monacillos, en cuanto a los siguientes extremos:

_____ A) Descripción de la Propiedad, Titular, cargas y gravámenes, del
         Sistema ágora.

_____ B) Asiento de Presentación _____ del Diario _____.

_____ C) Certificación Literal de todas las inscripciones.

_____ CH) Descripción de la Propiedad, Titular, cargas y gravámenes,
          con contenido de Libros Auxiliares

__✓__ D) Certificación de las siguientes inscripciones. _4ta Parcial sólo descripción
         y 10ª Completa, Mardid 34

_____ E) Certificación del Asiento _____ del Libro _____ de Hipoteca de
         Bienes Muebles.

_____ F) Certificación del Asiento _____ del Libro de Registro Mercantil.

_____ G) Certificación del Libro de Plano al Asiento _____ del Libro _____.

_____ H) Certificación . Negativa _____ o condiciones de la finca.

_____ I) Certificación de Embargo Federal Libro _____ folio _____ orden _____

Se incluye Comprobante por la suma de $ _6.00_ Código 5111 . Literal.

Advertencia: Esta solicitud de certificación caducará a los tres (3) meses después de la fecha
de presentación, de no ser renovada dentro de dicho plazo. De transcurrir dicho término, se le
devolverá la solicitud junto con los comprobantes que se hayan acompañado. Art.27.2
Reglamento Hipotecario.

_Amarilis González_                          Atentamente,
Nombre completo del solicitante,             _____
en letra de molde.                           Firma del solicitante

Teléfono _605-0709_          Dirección _P.O. Box 11083_
                                        _San Juan PR. 00920_

pg. 17

Estado Libre Asociado de Puerto Rico
Departamento de Justicia
Registro de la Propiedad
SECCION TERCERA DE SAN JUAN


TURNO - 960-


Yo, Lcda. Gloria M. Oppenheimer Keelan, Registradora de la Propiedad de Puerto Rico, a solicitud de Amarilis González, expido certificación fotocopiada de las inscripciones:-4ª parcial, en cuanto a la descripción- e inscripción 12ª - de la finca número: 948 .


## CERTIFICO

Que la inscripción:- 4ª- parcial, en cuanto a la descripción, al folio: 162- del tomo histórico número 26, y la inscripción: -12ª - al tomo móvil número 24, que surge(n) de la finca número 948 son fotocopiadas, selladas e iniciadas de dichos tomos de Monacillos. *No se certifica en cuanto a otros extremos, por no haber sido solicitado.* Expido la presente en San Juan, Puerto Rico, siendo la(s) 11:54 de la mañana del día 21 de noviembre de 2012.


DERECHOS :$6.00
Comprobante: 51352-2012-1120-62771452
insa


Lcda. Gloria M. Oppenheimer Keelan,
Registradora de la Propiedad

Estado Libre Asociado de Puerto Rico
Departamento de Justicia
Registro de la Propiedad

Sección: SAN JUAN III

Número de Finca: 948     Inscripción:12MA
*(Viene del folio 166 vuelta, del Tomo 26 de Monacillos)*
COMPRAVENTA E HIPOTECA

DESCRIPCIÓN: Descrita conforme con la inscripción
11ma; Urbana: Solar de forma rectangular que mide doce
metros de frente por veinte y un metros de fondo marcado
con el número tres de la manzana AE, *de la Urbanización
Puerto Nuevo*, con una cabida superficial de 252.00. Sobre
dicho solar hay una casa. CARGAS Y GRAVÁMENES:
Afecta a condiciones restrictivas, y edificación, hipoteca que
resulta de la inscripción 8va, a favor del Portador, por
$30,000.00 y las cargas que surgen del Registro.
TITULARES: Inscrita esta finca a favor de; *Frances
Xavier Prestia Díaz, también conocida como Francés X. C.
Prestia Díaz, como Francés Xavier Cabrini Prestia y como
Francés Prestia Díaz*, seguro social número 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,
mayor de edad, soltera, propietaria, vecina de San Juan,
Puerto Rico, según surge de la inscripción 11ma.
DERECHO QUE SE INSCRIBE: Compraventa e
Hipoteca en Garantía de Pagaré. VENDEDORES: *Francés
Xavier Prestia Díaz* con las circustancias personales
anteriormente expresadas, según surge de la inscripción
11ma.     COMPRADORES     Y     DEUDORES
HIPOTECARIOS: *Guston, Inc.* seguro social patronal
número 66-043-3843, representada en este acto por su
presidente Juan Carlos Balcells Gallareta, mayor de edad,
casado, comerciante, vecino de San Juan, Puerto Rico,
autorizado mediante resolución corporativa de fecha 12 de
abril de 2002, ante el notario Gustavo Umpierre Portón,
affidávit número 1675, quienes con esta compra adviene
dueños de esta finca. PRECIO DE VENTA: *$202,000.00*,
de los cuales los vendedores recibieron $20,000.00 con
anterioridad al otorgamiento de la escritura y los restantes
$182,000.00 los recibieron en el acto. La compraventa se
efectuó por $200.00 dólares menos del valor dado por relevo
de hacienda del testamento ya que fue la mayor oferta que se
recibió durante el período de venta de la misma.
HIPOTECA: A Favor de *Banco Popular de Puerto Rico*
representado por Nitza Cabello Acosta, con facultades
acreditadas en este Registro. PRINCIPAL: *$150,000.00*.
INTERÉS: *Una tasa anual equivalente a la tasa de
interés base anunciado por los principales bancos de los
Estados Unidos de Norte América para préstamos
corporativos según publicada en periódicos de
circulacióngeneral como The Wall Street Journal (la Tasa*



*Primaria)* FORMA DE PAGO DE LA HIPOTECA: Pagadero el principal e intereses en plazos mensuales. NÚMERO DE TESTIMONIO: *1677* . VENCIMIENTO: *A La Presentación*. CRÉDITOS GARANTIZADOS: Se garantizan tres sumas adicionales equivalentes al diez porciento *$15,000.00*, de la cuantía original del principal del pagaré cada una para cubrir costas, gastos y honorarios de abogado en caso de ejecución judicial, para cubrir otros adelantos que puedan hacerse bajo esta hipoteca y para intereses en adición a los garantizados por ley. TASACIÓN: *$150,000.00*, en caso de subasta. ADVERTENCIA: Se advierte que de exceder el tipo de interés pactado en esta hipoteca al interés permitido por ley, quedaría sujeto este contrato a las sanciones impuestas por el Art. 1652 del Código Civil de Puerto Rico DOCUMENTO PRESENTADO: Escritura Número 22 sobre Compraventa, otorgada en San Juan, el 12 de abril de 2002, ante el notario Gustavo J. Umpierre Pontón, donde comparecen los vendedores y los compradores. Se acompaña acta aclaratoria, de fecha 1 de noviembre de 2002, Gustavo J. Umpierre Pontón. Escritura Número 23 sobre Hipoteca, otorgada en San Juan, el 12 de abril de 2002, ante el notario Gustavo J. Umpierre Pontón, donde comparecen los deudores hipotecarios y el acreedor. DATOS DE PRESENTACIÓN: Respectivamente presentadas el 16 de agosto de 2002, a las 10:30 de la mañana al Asiento 287 del Diario 635, y el 16 de agosto de 2002, a las 10:36 de la 10:36 al Asiento 288 del Diario 635.
En San Juan, a __ de __ de 2002.
DERECHOS: $ 758.00cv  $550.00hipot.
PRESENTACIÓN Y CÓDIGO POLÍTICO: no. 2 arl
Finca 948
istr

ESTADO LIBRE ASOCIADO DE PUERTO RICO
DEPARTAMENTO DE JUSTICIA
REGISTRO DE LA PROPIEDAD

SECCION TERCERA DE SAN JUAN

# CERTIFICACIÓN

## RELATIVA A LA
## FINCA: 948
## TOMO:26
## FOLIO: 162

## DE MONACILLOS

## FECHA: 7 de mayo de 2013

# A INSTANCIA DE
# AMARILIS GONZALEZ GARCIA

Estado Libre Asociado de Puerto Rico
Departamento de Justicia
Registro de la Propiedad
Seccion Tercera de San Juan

3 de mayo de 2013

Hon. _____
Registrador de la Propiedad

Estimado Registrador:

Solicito expida certificación registral del tomo 481 del folio 78 de la finca

Número 948 de Monacillos, en cuanto a los siguientes extremos:

✓ A) Descripción de la Propiedad, Titular, cargas y gravámenes, del Sistema ágora.

_____ B) Asiento de Presentación _____ del Diario _____.

_____ C) Certificación Literal de todas las inscripciones.

_____ CH) Descripción de la Propiedad, Titular, cargas y gravámenes, con contenido de Libros Auxiliares.

_____ D) Certificación de las siguientes inscripciones, ____, ____, ____.

_____ E) Certificación del Asiento _____ del Libro _____ de Hipoteca de Bienes Muebles.

_____ F) Certificación del Asiento _____ del Libro de Registro Mercantil.

_____ G) Certificación del Libro del Plano al Asiento _____ del Libro _____.

_____ H) Certificación, Negativa, o condiciones de la finca.

_____ I) Certificación de Embargo Federal Libro ____ folio ____ orden ____.

Se incluye Comprobante por la suma de $ 6.00 Código 5111

Advertencia: Esta solicitud de certificación caducará a los tres (3) meses después de su fecha de presentación, de no ser renovada dentro de dicho plazo. De transcurrir dicho término, se le devolverá la solicitud junto con los comprobantes que se hayan acompañado. Art.27.2 Reglamento Hipotecario.

Amarilis Gonzalez Garcia
Nombre completo del solicitante,
en letra de molde.

787 605-0704
Teléfono _____

Atentamente,

_____
Firma del solicitante

Dirección P.O.Box 360695
San Juan PR 00936

Solicitante: AMARILIS GONZALEZ GARCIA

FINCA DE SAN JUAN Nº: 948

DATOS DE LA FINCA

**URBANA:** Solar de forma rectangular que mide doce (12.00) metros de frente por veintiún (21.00) metros de fondo, marcado con el Número Tres **(3) de la Manzana AE** de la <u>Urbanización Puerto Nuevo</u>, propiedad de la Everlasting Development Corporation, que radica en el Barrio Monacillos de Río Piedras, Puerto Rico, con un área superficial de Doscientos Cincuenta y Dos metros cuadrados **(252.00 m/c.)**, en lindes por el **norte, sur, este y oeste**, con propiedad de la Everlasting Development Corporation, y dando frente al este, con la Calle "Second Main Street" de la urbanización. Contiene una casa de dos plantas, que consta de cuatro cuartos de dormitorios, sala, comedor, porch, cocina, tres cuartos de baños, una terraza, cuarto de laundry, una oficina, marquesina y verja de concreto y bloques con hierro ornamental.Viene del folio 141 del tomo 250 de Río Piedras. **Descrita conforme a las inscripciones 4ª y 6ª a los folios 162 y 163 del tomo histórico 26 de Monacillos.**

TITULARIDAD

Inscrita a favor de La Sociedad Legal de Gananciales compuesta por <u>MIGUEL ANTONIO MONROIG ALMODOVAR Y ANA CRISTINA BALCELLS GALLARRETA</u>, mayores de edad, con domicilio en San Juan,con caracter ganancial,titulares del pleno dominio de esta finca,por la suma de **$208,851.71** según **la inscripción 13ª**, de fecha 10 de diciembre de 2012, al folio 78, del tomo 981 del término municipal de San Juan, y en virtud de la <u>escritura número 16 de Venta</u> otorgada en San Juan,el 21 de noviembre de 2011 ante el Notario JOSE MARIA CASTRO ALVAREZ.

CARGAS

Afecta , por su procedencia, a condiciones de tránsito y a condiciones restrictivas sobre edificación.

**No se certifica en cuanto a otros extremos por no haber sido solicitado.**

Finca-948

Documentos relativos a la finca presentados y pendientes de despacho, vigente el asiento de presentación, al cierre del Libro Diario del día anterior a la fecha de expedición de la presente nota: **NO hay documentos pendientes de despacho.**

San Juan a 7 de mayo de 2013.

Derechos: **$ 6.00**
No de Serie: 50480-2013-0503-07758151
insa-rev

Lcda. Gloria M. Oppenheimer Keelan,
Lcda. Delia Castillo de Colorado,
Registradoras de la Propiedad

Exhibit 7

Distribución de SLG - Juan C. Balcells & Amarilis Gonzalez
Estimado de Bienes a Diciembre 2006- Fecha de la Radicación de la Demanda de Divorcio

| Item | Activos | SLG |
|---|---|---|
| 1 | Casa Villas Reales | $260,000.00 |
| 2 | | |
| 3 | Seguro Acumulable | 40,000.00 |
| 4 | Bote Mako | 35,000.00 |
| 5 | Negocio (1) | 1,000,000.00 |
| 6 | Credito a la SLG por pagos de Prestamo Universidad JCB | 20,000.00 |
| 7 | De Diego 600,602 & 604 | 1,500,000.00 |
| 8 | Inventario (2) | 50,000.00 |
| | Casa y Fincas Lago Dos Bocas Utuado | 250,000.00 |
| 9 | Total | $3,155,000.00 |
| | | |
| | Deuda Hipoteca | (55,000.00) |
| 10 | Deuda HOA - Villas Reales | |
| 11 | Deuda VISA - SLG | |
| | Activos SLG | $3,210,000.00 |
| | Deuda de la SLG a AGG x pago hipoteca post-petition AGG (2011- 2014) | 39,000.00 |
| 12 | | |
| 13 | Deuda a AGG por Deuda Alimentos Menores + intereses | 239,000.00 |
| 14 | 4 Aptos. Costa Bonita, Culebra $150,000 c/u (2) | |
| 15 | Terreno Cape Coral (2) | - |

(1) Confirmar valoración del negocio, cambio de nombre y transferencias, según leyes
(2) Pendiente por investigar
Investigar las cuentas, pagos, desembolsos que se hicieron en fraude, en beneficio de terceros

Exhibit 8

**Coral Martinez Inserni & Associates**
**Forensic Accountants**
501 Elisa Colberg 6D
San Juan, PR 00907
(787) 543-3473

June 4, 2013

Fernando Van Derdys, Esq.
MCS Plaza Tenth Floor
255 Ponce De Leon Avenue
Hato Rey, San Juan, PR 00917

Re: Juan Carlos Balcells Gallareta (JCBG), Bankruptcy Case # BK11-06637
Juan Balcells Grau (JBG) & Leonie Gallareta (LGO), Bankruptcy Case # BK11-07334

## PRIVILEGED AND CONFIDENTIAL

Dear Sirs:

Pursuant to our meeting held May 20, 2013, we have been engaged to disclose our findings and analysis of some documentation obtained by Amarilis Gonzalez Garcia (AGG) related to Gusupa, Inc. debtor Juan Carlos Balcells Gallareta (JCBG), Juan Balcells Grau (JBG) and Leonie Gallareta (LGO), bankruptcy filings in August 5, 2011 and August 31, 2011 each respectively, and its connection to Gusupa, Inc and financial and legal transactions in their personal capacity.

This report is confidential and it is strictly intended to the persons involved in this investigation process and limited to the information provided of Gusupa, Inc., Juan Carlos Balcells Gallareta (JCBG), Juan Balcells Grau (JBG) and Leonie Gallareta (LGO), in relation to Gusupa, Inc and related transaction between themselves.

## SCOPE OF WORK AND LIMITATIONS OF REVIEW

The scope of our review includes but is not limited to the evaluation of documentation, and information provided to report the possible traces of questionable transactions that could affect third parties, creditors, associates and/or certain proprietors after the a bankruptcy filing by debtors.

Our review and analysis is limited to the limitations of the documentation and information provided and could be affected by obliterated transactions. To provide our review, we are relying on the information and documentation available.

The documentation available was provided by creditor, Amarilis Gonzalez Garcia. The lists of these documents are the detailed below:

## LIST OF DOCUMENTS AND SCHEDULES

1. Documentation related to three adjacent properties acquired, transferred and sold by Gusupa, Inc. during the period from April 8, 1999 to November 21, 2011:

   A. Property Registry Certifications for the properties located at Ave. De Diego #602, #604 and #600 in Puerto Nuevo, San Juan, and Puerto Rico. **EXHIBITS 1, 2, 3, 4 and 5.**

   B. Pictures of locations in Ave. De Diego #602 & #604, and CRIM aerial photography of the three properties. **EXHIBIT 6 and 7.**

   C. Sales Deeds for the Properties located at Ave. De Diego # 602 & #604 **EXHIBITS 8 & 9.**

   D. Municipal Property Tax Certifications for the properties located at Ave. De Diego # 602 & #604 as of September 4, 2013. **EXHIBIT 10 and 11.**

   E. Small Business Administration (SBA) Application for Business Loan and corresponding Small Business Unconditional Guarantee issued May 25, 1999, Juan Carlos Balcells Business Profile included as part of the May 25, 1999 SBA Application and the SBA Unconditional Guarantee issued April 12, 2002, with Gusupa, Inc. as borrower and Banco Popular as lender in both. **EXHIBITS 12, 13, 14 and 15.**

   F. Financial Statements of Mr. & Mrs. Juan Carlos Balcells as of December 31, 2000, August 31, 2001 and Gusupa, Inc. Financial Statements as of May 31, 2002 submitted to Banco Popular de Puerto Rico. (BPPR) **EXHIBITS 16, 17 & 18.**

   G. Rental and Purchase Option Agreement of property located at Ave. De Diego #600 in October 21, 1997. **EXHIBIT 19.**

   H. ARPE Use Permit for Ave. De Diego # 602 as March 11, 2005. **EXHIBIT 20**

   I. Rental Agreement for Property 602 signed June 2, 2006. **EXHIBIT 21**

2. Bank Statements of BPPR Flexicuenta # 022-048014 for the period from 2003 to 2010 (**EXHIBIT 22**), the Credit Line Agreement and the Security Agreement. (Some pages related to these items were missing.)

   A. Bank Statements for the months of April and May, 2005 of amounts exceeding $4,000. The transactions were highlighted on the specific pages. **EXHIBIT 23 and Schedule 3**

   B. Copy of some checks issued during March, April, May and June 2005 including endorsements. **EXHIBIT 23**

   C. Gusupa, Inc. Bank Security Agreement for the $250,000 line of credit issued September 25, 2000. **EXHIBIT 24**

   D. Bank Statements of the same account for the period January, 2003 to October, 2010 (EXHIBIT 22) and Bank Statements Analysis. **Schedule 1**

3. Department of State Corporate Registry History of Gusupa, Inc.

   A. Department of State Annual Reports for Gusupa, Inc. for years 2000 to 2011 (**EXHIBITS 25-36**)

    B. Department of State Non Compliance Certificates issued in October 4, 2004 and December 3, 2009. **EXHIBITS 37 & 38**

4. Copy of Juan Carlos Balcells Gallareta Bankruptcy Case # BK11-06637 and Juan Balcells Grau (JBG) & Leone Gallareta (LGO) Bankruptcy Case # BK11-07334. **EXHIBITS 39 & 40**

5. Copy of Sales Deed Utuado property

## REVIEW OF GUSUPA, INC PROPERTIES AND FINDINGS:

### Ave. De Diego # 602

On April 12, 2002 the lot at Ave. De Diego #602 was acquired by Gusupa, Inc. for a sales price of $202,000. The transaction reflected $20,000 was given as a down payment prior to the issuance of the Sales and $182,000 were financed by BPPR. In this transaction the "Buyer", Gusupa, Inc., was represented by Juan Carlos Balcells Gallareta as president and owner of Gusupa, Inc. The documents reviewed include a Small Business Administration Unconditional Guarantee that was issued to Gusupa, Inc. in April 12, 2002 in the amount of $181,800. **EXHIBIT 15**

The documentation was submitted to AGG by Banco Popular incomplete and did not include the SBA Application and Eligibility Information Required Form, and other relevant information; therefore, we could not corroborate the "Purpose of the Loan". Nevertheless, the bank information provided and information provided by AGG supports SBA Guarantee Loan was made for the purpose of acquiring this lot. Additional information can be required to Banco Popular to confirm the loan purpose and other relevant information.

In the SBA application form Juan Carlos Balcells Gallarreta and Amarilis Gonzalez Garcia represent as sole proprietor of Gusupa, Inc.

The PR Property Registry Certification confirms on **November 21, 2011** this property was subsequently transferred to insiders, Antonio Monroig Almodovar (AMA) and Ana Cristina Balcells Gallareta (ABG), Brother In-law and Sister, respectively of Juan Carlos Gallareta, and Daughter and Son-In Law of Juan Balcells Grau and Leona Gallareta. **EXHIBIT 2** This asset was transferred after the Bankruptcy filing of both Juan Carlos Balcells Gallareta and Juan Balcells Grau, both filed in August 2011, three months after filing.

To assess actual value of this asset at the time of the transfer, we compared the sales value of a property adjacent, De Diego #600, to the property transferred. This property was sold on June 2008 for $500,000. **EXHIBIT 4**

**Description of how the documents and transactions listed above may interfere and affect third parties and creditors under a Bankruptcy case.**

1. Transfer of Property De Diego #602 to an insider

    A. The net worth of this property was estimated by us for $430,000. For this estimate, we relied on the documentation available and the following facts were taken into consideration:

        a. The property value when the property was transferred was $500,000

        b. The property had a mortgage payable for 15 years

        c. The mortgage was signed in the year 2002; therefore, only 5 years remained (33.33% of the period remaining) was due at the time of the transfer. If we adjust the debt to reflect

only the month remaining to finally pay off the mortgage the estimated debt remaining would be approximately $70,000.

d. This estimate does not include the cost of financing activities paid by the corporation, which should include among others, interest, taxes and other expenses related to maintenance of the property.

e. The property was rented to a third party. This information is based on a copy of a Use Permit and rental agreement. **EXHIBIT 20 and 21.**

f. Financial Statements available do not detail income related to the rental of this property.

The fact the rental income is not reflected in the Financial Statements Gusupa provided may represent another party other than corporation was accounting for the revenue. This transaction implies the corporation is assuming expenses and the income required to reflect its earnings never reaches accountability. The result of this transaction reflects an incorrect net income and revenue affecting the liquidity ratio. Additional adverse consequences of this transfer are imposed to creditors, partners and/or stockholders because the monies available to fulfill obligations directly related, such as mortgage payments, interest, insurance and others are never available. Then funds available from operations have to be disbursed for these unrelated expenses reducing the real profit margin of Gusupa

The transfer of the asset of the Corporation to an insider after the Bankruptcy filings of JCBG and JBC & LGO reduced the net worth of the corporation affecting creditors, partners, stockholders and/or parties with interest in the ownership. We have not been able to obtain information to support the reasonability of this transfer. To protect the interest of the parties affected by this action, we recommend an urgent request for additional information to the parties that are alleging an unsupported ownership of Gusupa, Inc and its assets. Before the Bankruptcy discharge, a complete examination of the records and disclosure of transactions should be required. We conclude if the parties were exercising due diligence and in good faith, disclosure of the corporation value would have been reported. The transfer of this asset for $150,000 is questionable when the debtors also alleged an uncollectable account from the corporation of $75,000 and a comparable property of $500,000 adjacent to the property transferred to insiders.

Taking into consideration the transactions evidenced affecting the net worth of the corporation to insiders, and the inaccurate representation of the value of stock and interest of $1,000 when filing bankruptcy, lead to conclude, the transactions could had taken placed to transfer debt and liabilities to a third party and not to fulfill credit obligations.

**Ave. De Diego # 604**

Gusupa, Inc. owns a two story building located at Ave. De Diego #604. Refer to the Notes disclose in the Financial Statements as of May 31, 2002. **EXHIBIT 18**

The notes also mention mortgage final payment for this property was due in 2004. PR Property Registry Certification confirms this property still belongs to Gusupa as November 2012. **EXHIBIT 2**

**Description and detail of how these documents and transactions may interfere and affect third parties and creditors under a Bankruptcy case.**

Gusupa documentation reflects some asset pending liquidation.

The principals JBG and LGO alleged the corporation had a value of only $1,000 and an uncollectable debt to them from the corporation of $75,000. To possibly avoid the request of additional

information these debtors undervalued the corporation and declared the asset as exempt. If they would have disclosed correctly and represented the correct value of the corporation, the bankruptcy process would have obligated them to provide all the information required to appraise the real net worth of the corporation. (Refer to **EXHIBIT 40**)

## Ave. De Diego # 600

To disclose history on the transactions related to this property, we are enclosing the Rental Agreement with Purchase Option prior to the acquisition of the this lot for the purpose of showing that in this agreement Gusupa, Inc. was represented by Mr. & Mrs. Balcells Gallareta (AGG) **EXHIBIT 19.**

The financing was done through a Small Business Unconditional Guarantee Loan in which Gusupa, Inc. was the borrower and Banco Popular, Inc., the lender. In this transaction the SBA Guaranteed Amount was $175,500, leaving an unsecured balance to be financed by Banco Popular of $58,500. In the SBA application form Juan Carlos Balcells Gallareta represented that the sole owners of Gusupa, Inc. were he and his wife Amarilis Gonzalez Garcia. He also represented Gusupa; Inc. had a value of $1,000,000. **EXHIBIT 14**

This property was subsequently sold. We traced a BPPR deposit in March 11, 2005 of $328,705.58, and also in the same month a payment of $249,478.52 to the credit line. **EXHIBIT 22**

This transaction should be analyzed to verify if funds from this sale were used to cover expenses related to the corporation financing, investing and expending activities.

## Review of Bank information

### Banco Popular Gusupa, Inc. Flexicuenta # 022-048014 and line of credit agreement

The documentation submitted by Banco Popular was partially submitted or omitted for some pages of Bank Statements corresponding to April thru June 2005. Our analysis was based on the pages submitted, but the additional information in the missing pages may be relevant to our findings. We suggest further investigation of this obliterated documentation. We are including an analysis of Gusupa, Inc. bank account monthly transactions for the period 2003 to 2010. **Schedule 1**

A. Bank Statements for the months of April and May, 2005 of amounts exceeding $4,000. The transactions were highlighted on the specific pages. **EXHIBIT 22 and Schedule 3**

B. Copy of some checks issued during March, April, May and June 2005 including endorsements. **EXHIBIT 23**

C. Gusupa, Inc. Bank Security Agreement for the $250,000 line of credit issued September 25, 2000. **EXHIBIT 24**

D. Bank Statements of the same account for the period January, 2003 to October, 2010 and Bank Statements Analysis. **Schedule 1**

In the period of March 2005 to June 2005, we identified some disbursements exceeding $4,000. Amarilis Gonzalez Garcia was able to obtain a sample of checks and the corresponding endorsements. **EXHIBIT 23**

Also in Gusupa bank statements we noticed many check payments of round amounts, for $400, $600, and $800. These amounts are not compatible or typical with normal business operating expenses. Verification of the concept of these disbursements is recommended to corroborate these payments

relate to the corporation. This can be observed and repeats consistently in all Bank Statements examined from January 2003 to October 2010. **EXHIBIT 22**

## Description and detail of how these documents and transactions may interfere and affect third parties and creditors under a Bankruptcy case.

An analysis of the Summary of Banco Popular Bank Statements per year (Refer **to Schedule 2**) shows since 2004 the corporation had liquidity ratio of less than 1. This fact may represent transactions not related to the corporation are affecting the liquidity of the corporation.

We advise evaluation and investigation of transactions exceeding $4,000 and transactions not compatible with normal business operations. The concept and nature of each disbursement specifically if it is unrelated to the corporation may require adjustments to the amounts reported by debtors.

The bank statement analysis also reflected a reduction in deposits for the two years prior to the bankruptcy filings. We suggest an investigation of the corporate physical location; telephone numbers and clients to locate the entity were the sales activities were channeled.

An investigation of all contract agreements, transfer of properties, bank accounts, credit history, personal financial condition, credit cards statements, accounting books and/or any document related should be carefully examine to reinstate the correct value to the corporation. This analysis is not limited to JCBG and AGG, and JBG and LGO, and ABG and AMA, but to any person or entity involved.

## Credit Line of $250,000 Agreement

This agreement was signed by JCBG as owners of Gusupa, Inc. **EXHIBIT 24** The financial guarantee to obtain this credit line relates to each one Juan Carlos Balcells Gallareta. The credit line agreement incorporates previous mortgage deeds signed by same parties.

## Description and detail of how these documents and transactions may interfere and affect third parties and creditors under a Bankruptcy case.

The transactions evidenced use of corporate monies to pay personal credit cards. Information from banks providing financing to Gusupa, Inc., and all debtors involve in these actions, after 2006 should be investigated carefully. We only have Information of the corporation operations and financing activities until 2006. The debtors have over protected all information related to the corporation preventing a party who provided financial risk to limit its exposure. This fact should be carefully examined.

An investigation of the nature and concept of withdrawals against the credit line to determine if debt reported for the corporation relates to the corporation operations should be performed prior to bankruptcy discharge of the debtor. The fact, that we detected disbursements related to accounts included in debts claim as part of their personal bankruptcies proves the corporation carries activities related to them in their personal capacity.

If the corporation debt was restated to exclude all disbursements not related to the corporation operations by certain stockholders during a specific period, the equity of the corporation would be accurate. If these disbursements not related to the operations were made with the credit available, the effect of the transaction to reduce the corporation net worth is duplicated, by increasing the debt as well as reducing income, affecting both Income and Balance Sheet for the period.

Additional consequences result from the use of the corporation monies and credit to pay expenses not related to the corporation. These questionable transactions create exposure and risk jeopardizing the

legal protection contained in the corporation as a separate entity. This method of accounting for expenses not related to operations exposes the corporate Vail. Legal approach of this action should be addressed by legal counsel.

If the corporation equity was restated to include all assets transfers to insiders and exclude all payments related to disbursements not related to the corporation operations by certain stockholders during a specific period, the net worth and interest of the partners or stockholders would reflect the correct amount to be disclose in the bankruptcy filings of these debtors.

Corporate ownership represented by debtors should be investigated to verify legality of transaction of transfer of ownership to assure third parties, creditors and certain stockholders preserve their rights to limit their exposure to account for transactions strictly related to the intention to guarantee corporation operations and not others unrelated. The debtors' obstinacy and reluctance to discover evidence is an important fact to be considered

## Gusupa Inc. Compliance with Corporate Good Standing

As is demonstrated the corporation has never been in compliance with filing for a good standing. This is due for not filing the required Annual Reports for the year 1983-1999 and the reports required to 2000 and 2001 were filed with deficiencies. Legal consequences of this fact should addressed by an attorney. Refer to **EXHIBITS 37 and 38**

## Other Assets available

AGG provided documentation related to a property owned by JBG and LGO located in Utuado, Puerto Rico. This property was sold to a third party on May 5, 2009 for $225,000. The sale deed stated a Note Payable to the owner for $150,000. (Refer to **Exhibit 41**) This note payable was due on 2010. We suggest further investigation of this transaction. This land related to the property consisted of 12 "cuerdas". AGG alleges another property of 18 "cuerdas" was part of the assets of these debtors. Information regarding this asset will be submitted when available. Investigation of this matter is suggested.

## Summary, Findings and Recommendations

An investigation of all contract agreements, transfer of properties, bank accounts, credit history, personal financial condition, credit cards statements, accounting books and/or any document related should be carefully examined to reinstate the correct value to the corporation. This analysis is not limited to JCBG and AGG, and JBG and LGO, and ABG and AMA, but to any person or entity involved.

In addition, an investigation of the nature and concept of withdrawals against the credit line to determine if debt reported for the corporation relates to the corporation operations should be performed prior to bankruptcy discharge of the debtor. The fact, that we detected disbursements related to accounts included in debts claim as part of their personal bankruptcies proves that the corporation carries activities related to them in their personal capacity.

In addition, it is important to obtain all documents related to the financing and credit provided to and evaluated by Banco Popular de Puerto Rico to approve credit lines and other property financing activities. All transactions after 2006 are important to establish any transactions affecting third parties and creditors. Special attention is suggested to the look back time frame of transactions and limits provided in the bankruptcy law.

Debtors have over protected disclosure of some relevant information. This pattern of action is usually found when the information and documentation is adversary to the party concealing a material fact or circumstance. This practice usually is to obtain advantage affecting a party in a contractual arrangement. The debtors' reluctance to discover evidence is an important fact to be considered.

This report contains a copy of all documents reviewed and limited to the same until further documentation is considered.

Respectfully;

Coral Martínez Inserni

Xc: Amarilis González García